Mr. Justice Morris
delivered the opinion of the Court:
This is an appeal from the Supreme Court of the District in a proceeding instituted in that court under the provisions of the act of Congress of June 8, 1898, entitled “An act conferring on the Supreme Court of the District of Columbia jurisdiction to take proof of the execution of wills affecting real estate, and for other purposes.”
Prior to that act the Supreme Court of the District holding a special term for Orphans’ Court business, and its predecessor in that regard, the former Orphans’ Court of the District, had jurisdiction to take the probate of wills only in *130 so far as the affected personal property, and to superintend the administration of such property. There was no authority in either to take the probate of wills so as to affect real estate. This was left to the ordinary courts of general jurisdiction as occasion might arise, in suits of ejectment or otherwise, for the enforcement of such wills. In response to a general demand of the community for a change in this regard, the act of June 8,1898, operated a radical alteration in the law. This act, among others, contained the following provisions, which are invoked as affecting the present controversy:
“ Sec. 2. That, in addition to the jurisdiction conferred in the preceding section of this act, plenary jurisdiction is hereby given to the said court [the Supreme Court of the District], holding the said special term, to hear and determine all questions relating to. the execution and to the validity of any and all wills devising any real estate within the District of Columbia, and of any and,all wills and testaments properly presented for probate therein, and to admit the same to probate and record in said special term; and neither the execution nor the validity of any such will or testament so admitted to probate and record shall be impeached or examined collaterally, but the same shall be in all respects and as to all persons res judicata, subject, nevertheless, to the provisions hereinafter contained.
“Sec. 3. That all issues of fact hereafter arising in' the supreme court of the District of Columbia holding a special term for orphans’ court business, including those relating to the execution or the validity of any will or testament, shall hereafter be tried before said justice holding said special term, and when required for such purpose jurors shall be drawn in the manner now by law provided for the drawing of jurors for service at the special term of the supreme court of the District of Columbia sitting as a circuit court for said District.
“Sec. 4. That no will or testament shall be hereafter *131 admitted to probate and record in the said District until the following procedure shall have been followed:
“Whenever any will or testament shall be presented for probate and record to the said justice, he shall direct all of the heirs at law or next of kin of the testator, or both, as the case may require, to be summoned to appear before him at a certain day, not earlier than ten days from the date of said presentation. If said summons shall be returned personally served upon all of said heirs at law or next of kin, or both, at least five days before said'return day, then, if no caveat be filed to said will, the said j ustice may forthwith admit the same to probate and record. But if any of said heirs at law or next of kin be returned ‘not to be found,’ then the said justice shall cause not less than thirty days’ notice of the application for such probate to be published in some newspaper of general circulation in the District of Columbia, and may order such other publication as the case may require. And upon such notified day, or such subsequent day as the court shall appoint, the said application for probate shall be heard, due proof of such publication being made; and if no caveat be filed, the said will or testament shall be admitted to probate and record. In all cases in which all of the heirs at law or next of kin of a testator, or both, consent to such probate and record, such will and testament shall thereupon be forthwith admitted to probate and record without the hereinbefore described proceedings. In all cases in which any of said heirs at law or next of kin is an infant or of unsound mind, the said justice shall appoint a guardian ad litem for said infant or person of unsound mind: Provided, That in no case shall any will or testament be admitted to probate and record save upon formal proof of its proper execution.
“Sec. 6. That whenever aiiy caveat shall be filed, issues shall be framed under the direction of the court for trial by jury: Provided, That in all cases in which all persons interested are sui juris and are before the court, the issues may be *132 tried and determined by the court without a jury upon the written consent of all such parties. At least ten days prior to the time of trial all of the heirs at law or next of kin of the decedent, or both together, with all persons claiming under the will, shall be each served with a copy of said issues and a notification of the time and place of the trial thereof. ... If, as to any party in interest, the notification shall be returned 'not to be found/ the court shall assign a new day for such trial, and shall order publication at least twice a week for a period of not less than four weeks of a copy of the issues and notification of trial in some newspaper of general circulation in the District of Columbia, and may order such other publication as the case may require. And the Supreme Court of the District of Columbia may from time to time prescribe and revise rules and regulations for service personally upon such party outside of the District of Columbia of a copy of such issues and notification, but personal service upon absent defendants shall in no case be essential to the jurisdiction of the court in the premises. Upon the day notified, or such subsequent day as the court shall appoint, the court shall proceed with the trial of said issues, due proof of such publication, and, when required, of such personal service being made, and due opportunity being given to any party in interest to demand other and further issues. On the trial of any such issue exceptions may be taken to the rulings of the court, which shall be embodied in a bill of exceptions, to be settled and signed by the justice presiding within such time as may be fixed by the rules of practice prescribed from time to time by the supreme court of the District of Columbia in general term, and the said justice shall have the same power to set aside the verdict and grant a new trial that is possessed and exercised by the supreme court of the District of Columbia in cases tried with a jury according to the course of the common law, and as to such trials shall have all other powers now vested by law in the supreme *133 court of the District of Columbia holding a special term as a circuit court. In all cases in which such issues shall be tried the verdict of the jury and the judgment of the court thereon shall, subject to proceeding in error and to such revision as- the common law provides, be res judicata as to all persons, nor shall the validity of any such judgment be impeached or examined collaterally.
“Sec. 8. That the foregoing sections of this act shall apply only to wills and testaments hereafter offered for probate, and, in cases of intestacy, to the estates of such persons as shall die after the passage of this act: Provided, That in the supreme court of the District of Columbia holding a term for orphans’ court business any person interested under any will heretofore filed in said court may offer the same for probate as a will of real estate, whereupon such proceedings shall be had as by this Act are authorized in regard to wills hereafter offered for probate.
“Sec. 9. . . . That the provisions of this section shall not apply to any proceedings at law or in equity pend-ing at the date of the passage of this act, or commenced within one year after the passage of this act, wherein or whereby the validity of such will or codicil is or shall be called in question.”
With this act in force, the appellee, Charles R. Burr, on July 5, 1899, being the executor named in a paper-writing purporting to be the last will and testament of one Ezra W. Leach, filed a petition in the Supreme Court of the District holding a special term for Orphans’ Court business, for the purpose of the probate of that will as a will of real estate, the same, it seems, having, previously to the passage of the act, been probated and admitted to record in that court, after contest by some of the next of kin, as a valid will of personalty. Notice of the application for the new probate was duly given in accordance with the provisions of the act of 1898 to the heirs at law of the deceased; and these appeared by attorney, and made answer to the petition- *134 The substance of the answer was a denial of the testamentary capacity of the deceased, duress exercised over the testator by the beneficiary under the will, one Samuel H. Lucas, and an allegation that the testator did not at the time of the execution of the will own the property sought to be transmitted thereby, having previously, as it was alleged, made a deed of conveyance thereof, and that the alleged will was not the will of the deceased. And the answer was interposed as a caveat to the will.
Reply was made by the appellees to the caveat, alleging the validity of the will; and thereupon issues were framed by the court. These issues, three in number, were as follows: (1) Whether at the time of the execution of the alleged will, which was December 21, 1896, a few hours before the death of the testator, he was of sound mind, capable of executing a valid deed or contract; (2) Whether the paper-writing in question had been procured from him by threats, menaces, or duress exercised over him by Lucas or any other person; and, (3) Whether such paper-writing had been procured by fraud on the part of Lucas or any other person.
Soon afterwards a motion was made on behalf of the heirs at law to vacate the order approving these issues, on the ground, as alleged, that the act of Congress did not apply to wills offered for probate prior to the date of its passage; but it does not appear that any action of the court was taken, or sought to be taken, upon the motion. Then a motion was interposed on behalf of the same parties for the allowance of a further issue, whether the paper-writing in question was “a valid operative instrument.” On this motion likewise the record before us shows no action taken. And why these motions should have been introduced into this .record, where they are a mere incumbrance, is not apparent.
The issues were set for trial; but, on the motion of the attorney for the caveators, the time therefor was enlarged, *135 and a new day was set for the purpose, with a proviso in the order, that, inasmuch as some of the heirs at law, who were named, had been returned “ not to be found,” the order and a copy of the issues should be published twice a week for four weeks in the Evening Star newspaper. The order was made on January 26, 1900; and the required publication was made on January 26, January 30, and February 2, 6, 9,13,16 and 20,1900 — the first advertisement being in the same week and on the same day on which the order was made, two advertisements in .each one of the three following weeks, and the last one in the week thereafter.
The trial was finally had on March 5 and 6, 1900. At the beginning of it, the caveators, who had been served with process, or who had appeared in the cause, were by order of court made plaintiffs, and the executor Burr and Samuel H. Lucas were made defendants; and thus they went to trial. The only testimony offered was that adduced on behalf of the caveators. At its conclusion the counsel for the caveatees moved the court to instruct the jury to render a verdict in favor of the caveatees on all the issues, on the ground that the caveators had adduced no testimony which entitled them to go to the jury; and this motion the court allowed, and directed a verdict accordingly. Exception to this ruling was taken by the caveators. After motion for a new trial overruled, judgment was rendered upon the verdict, and the will was admitted to probate and record as a valid will of real estate. From this order the present appeal has been taken on behalf of the caveators.
Two briefs have been filed in this cause on behalf of the appellants, the first one by the attorney who conducted the cause in the court below and took the appeal, but wbo has been prevented from' appearing in this court; and the second by other counsel. Some apparent confusion is introduced into the case by the fact that the assignments of error in these two briefs are different, the former containing sixteen, the latter only four assignments. But while the *136 latter brief is designated as “supplemental,” the four assignments contained in it sufficiently state all the questions in the case that can be regarded as substantial, and we may therefore disregard the assignments contained in the original brief.
The four assignments of error for our consideration are: 1st. That the court below was without authority or jurisdiction to admit the will in question to probate, for the reason, as alleged, that the procedure prescribed by the act of Congress of 1898 had not been followed; 2d. That the publication against absent parties was not in accordance with the order of the court, or the provisions of the act; 3d. That it was error to direct the jury to render a verdict for the caveatees; 4th. That there was nothing upon which the alleged will could operate, inasmuch, as it is alleged, the testator had previously disposed of the same property by deed.
The first and second of these assignments may be considered together, since they have reference to the same subject-matter, that of the procedure prescribed by the act of Congress of 1898. And in this connection it may be stated that a large part of the argument of counsel on the .point is, in our opinion, irrelevant, inasmuch as it is based on the theory that the record should show some things, which it is claimed that it does not show, when confessedly the whole record is not before us, but only certain specified parts of it, and in fact the original papers from the court below, not included in the transcript before us, have been produced in the argument of the cause to show that these very things had been done. The appellants have brought the record here; and, if they would show that jurisdiction was wanting in the court below, by reason of the absence of some essential part of the prescribed procedure, it was their duty to bring such a complete record here as would plainly show the fact.
The only question that is deserving of consideration in *137 this connection is, whether, after the issues between the parties had been formulated under the order of the court, there was sufficient publication of that order and of the time assigned for the trial, in accordance with the requirements of the act of Congress; and this question is properly raised, since the record before us shows precisely what was done.
The order of the court, approving the issues and directing notice to absent parties by way of publication, was made on Friday, January 26, 1900. On the same day, in the afternoon, the advertisement was inserted in The Evening Star newspaper; and it was repeated on Tuesday and Friday of the following week, and on Tuesday and Friday of each of the two following weeks, and on Tuesday of the fourth week thereafter. The order required publication “twice a week for four weeks,” and the act of Congress required publication “at least twice a week for a period of not less than four weeks.” The question is, whether the publication actually made was in compliance with these requirements; and this again depends upon the question •whether the act of Congress and the order of the court by the term week intended the conventional week of seven days, beginning on Sunday and ending on Saturday, or a period merely of seven consecutive days without reference to any special commencement or conclusion. If the latter was meant, then the publication in the present case was undoubtedly sufficient; but if the term was intended to be taken in the former sense, the publication was insufficient.
But we are of opinion that the word week in this act of Congress was not intended to mean the conventional week beginning with Sunday and ending with Saturday, but a period of seven consecutive days. The word is used in both senses, but the primary sense is that of a period of seven consecutive days. So it is given by Webster’s dictionary, and by all the law dictionaries. Only in a secondary sense is the term applied to mean the specific period of time beginning with Sunday and ending with Saturday. Undoubtedly *138 the generic, and not the specific meaning is to be taken, unless the contrary is expressly stated, or necessarily implied in the context in which the word is used; and we find nothing in the act of Congress of 1898 to show that the conventional week was intended. On the contrary, the plain import of that act is that the word is to be taken in its primary, and not in its conventional sense. For it requires the publication to' be not for four weeks, or for any number of weeks, but for a period of time not less than four weeks. The period of time is to be measured by weeks, evidently without reference of any kind to the conventional week.
In support of their contention, however, the appellants cite the case of Ronkendorff v. Taylor, 4 Pet. 349, 361. There the question was as to the legality and sufficiency of a notice given by a collector of taxes of an intended sale of property for non-payment of taxes. The law in force at the time required such notice to be given by advertisement in a newspaper once a week for three months. The collector gave the required notice for the specified length of time; but the advertisement, although inserted once in each conventional week, was not inserted always on the same day of the week, so that sometimes there was an interval of eleven days between the successive publications. In regard to this the court said:
“ The words of the law are ‘ once a week.’ Does this limit the publication to a particular day of the week ? If the notice be published on Monday, is it fatal to omit the publication until the Tuesday week following ? The object of the notice is as well answered by such a publication as if it had been made on the following Monday. A week is a definite period of time, commencing on Sunday and ending on Saturday. By this construction the notice in this case must be held sufficient. It was published Monday, January 6th, and omitted until Saturday, Januaiy the 18th, leaving an interval of eleven days; still the publication on Saturday *139 was within the week succeeding the notice of the 6th. It would be a most rigid construction of the act of Congress, justified neither by its spirit nor by its language, to say that this notice must be published on any particular day of a week. If published once a week for three months, the law is complied with, and its object effectuated.”
It is clear to us that the ruling of the court below in the present case is not antagonistic to what was said by the Supreme Court of the United States in the case cited. The question was not the same in that case as that now before us. It is very plain that, when that court said that “ a week was a definite period of time commencing on Sunday and ending on Saturday,” it did not mean that a week might not more generally be described as a period of seven consecutive days, without reference to any specific day of commencement. With regard to the case before that court, it was held that the one advertisement required might be made on any day of the conventional week. But if the question had been as to when the week should begin to be counted for the purpose of the determination of the entire period for which the advertisement should be inserted, certainly we are justified in assuming that it would hold, in accordance with the common understanding of the word, that a week might begin on any day for the purposes of the act.
We are of opinion, therefore, that the publication here had was duly made for the time prescribed by the act of Congress and the order of the court, and that there was no want of jurisdiction in the court by reason of any insufficient publication.
It is argued in the next place, that it was error on the part of the trial court to direct a verdict for the caveatees. The argument goes so far as to deny the right of that court to direct a verdict in any case or under any circumstances upon issues formulated under this act of Congress. But we know of no special sanctity that inheres in cases of this *140 character to exclude the ordinary supervising power of the court and to conserve to the jury the arbitrament not only of questions of fact, but equally of questions of law, as this argument would require. On the contrary, the act of Congress itself specifically provides that the trial justice shall have “all the powers now vested by law in the Supreme Court of the District of Columbia holding a special term as a Circuit Court” including therein the power to settle bills of exceptions, to set aside verdicts, and to grant new trials, all the powers, in fact, which have been exercised in the courts of common law from time immemorial in the trial of issues transmitted to them from the Orphans’ Court. The act of 1898 had two great purposes to subserve, the one to assimilate the probate of wills of real estate to the previously existing law which governed the matter of the probate of wills of personalty, and the other to authorize the trial of issues in the probate court itself, instead of having them transmitted to the common law branch of the court for trial; and it certainly contemplated, and it made, no change in the previously existing and well settled practice on the trial of issues.
The right of the trial court, therefore, to instruct the jury, and in proper cases to direct a verdict, can not reasonably be controverted; and the only question open here is whether the present was a proper case in which to direct a verdict; that is, whether there was any sufficient testimony in this case upon any of the issues proper to be submitted to a jury. We are of opinion that the trial court ruled rightly that there was no such testimony. We have sought in vain through the testimony embodied in the bill of exceptions for even a scintilla of evidence proper to go to a jury. The only portion of the testimony seriously insisted on by the appellants in this connection is a part of the deposition of Rev. Hugh T. Stevenson, the pastor of the church of which the deceased testator was a member. This deposition was originally taken by the caveatees, and was intended to be used *141 on their behalf; but the caveators offered a portion of it in evidence for themselves. The substance of this was that the witness was the pastor of the church of which the testator was a member; that the testator had always been active in church matters, and was a member of the executive committee of the denomination to which he belonged; that he was a man of excellent ability and intelligence, and well competent to transact business up to the very end of his life; that the witness observed no change in his business capacity to the time of his death; that a few hours before the testator’s death, the testator had sent for witness, and had stated to him that he had wanted to give the church a parsonage, hut that it was too late now to do it, in view of the prohibitions of the law; and that he now desired to execute some paper whereby his property would be vested in Samuel H. Lucas, who would give effect to his wishes in regard to the church; that this Samuel H. Lucas was a colored man whom the testator had taken into his service years before, and for whom, having no family of his own, he had taken a great fancy, and to whom, in fact, he had for a long time committed the management of his business; that, accordingly, in pursuance of the testator’s directions, the witness had prepared a paper in the form of a deed, and had sent for a notary to come in and see to its execution; that the appellee Burr, who was a friend of the testator and who is named as executor in the will, had also been sent for; that, after the preparation of the deed, its signature by Leach, and acknowledgment by him, but before the notary had affixed any certificate to it, the witness expressed some doubt, in view of his ignorance of such matters, whether the paper was in proper form for the purpose, and he suggested to Leach that, in order to make things sure, he might make a will; that accordingly the testator directed the notary to draw up a will, and the notary drew up the will in question, which was duly executed by the testator; and that Samuel H. Lucas had no part whatever in the procurement of the will. It *142 also appears that the deed prepared by Mr. Stevenson had never been completed by the attachment of the official certificate of the notary and had never been delivered.
Upon this testimony it was argued that a jury might fairly have inferred the exercise of undue influence by Stevenson on the testator. But we fail to find any justification for such an inference. Even assuming that the opportunity for such influence was present, and that the relations between the testator and Stevenson were such as to throw upon the caveatees the burden of proving that no such undue influence was exercised, as to which under the circumstances there is reason to doubt, yet the fact is that the testimony of Stevenson fully and fairly sustains that burden. He became the witness of the caveators; they introduced his deposition in evidence, and thereby they vouched for his integrity and truthfulness. He tells a straightforward story, in itself not unreasonable; and so far as it is possible to prove a negative, his statement completely disproves the exercise of any undue influence by him upon the testator. The utmost that could be said of the transaction in this regard is, that the opportunity was present for the exercise of such influence, and that being a minister of the gospel he might justly be suspected of doing what ministers of the gospel have often done under similar circumstances. But suspicion is not proof, and proof is required to sustain the charge of fraud, as well as every other fact alleged and required to be sustained by him who alleges it. The statement of the transaction as given by Stevenson, a statement for which the caveators have vouched by giving it in evidence, contains not one scintilla of evidence that he exercised any influence whatever over the testator. On the contrary, it is decisive to the effect that the scheme of the will emanated solely and exclusively from the testator himself.
The last contention on bebalf of the appellants is that the will in question was inoperative, because the testator, as it is alleged, had already conveyed the same property by deed *143 which he attempted to convey by the will. But plainly this contention is untenable. It is very clear from the testimony that the alleged deed was never completed, and lacked the essential elemeut of delivery. Moreover, it is not quite apparent from the record before us what property, if any, the deed purported to convey, or whether it was drawn in a manner to convey any property. It is not contained in this record; and it does not appear from the record that it was ever offered in evidence in the case. And yet it seems to have been accessible to the appellants; and if it was important for their contention in the cause to have it introduced in evidence, they could have compelled its production. The fact that they did not do so is evidence that it would not have greatly served their purpose. And even if the fact be that it was actually introduced in evidence, we have no means of determining its contents, since, as we have stated, it is not contained in the record before us, and there is nothing in the record to show either its contents or its operative character. We are not justified, therefore, in assuming that the deed, even if we could suppose it to have been completed and to have been actually delivered to the grantee, conveyed the same property upon which the will was intended to operate.
Moreover, if the deed in question was valid to convey the testator’s property to the grantee named in. it, it is not apparent how the appellants can be prejudiced by the admission of the will to probate. For, since the grantee in the'deed and the donee under the will are one and the same person, if the grantee has already good title under the deed, as against the appellants, certainly the appellants can not be injured- by such confirmation, if any, as the will may give to the previous grant. The fact that, by the act of Congress, the adjudication on the will in the present proceeding is made a finality as to the validity of the will, can not have the effect of substituting that will for the prior deed, if that prior deed was a valid operative instrument; *144 and if it was not a valid operative instrument, of course, the contention of the appellants wholly fails.
We find no error in the record ; and the order and judgment appealed from must therefore be affirmed, with costs. And it is so ordered.