MARY RONKENDORFF, PLAINTIFF IN ERROR *vs.* JAMES N. TAY-
LOR'S LESSEE, DEFENDANT IN ERROR

The official tax books of the corporation of Washington, made up by the register from the original returns or lists of the assessors laid before the court of appeals, he being empowered by the ordinances of the corporation to correct the valuations made by the assessors, are evidence ; and it is not required that the assessor's original lists shall be produced in evidence, to prove the assessment of the taxes on real estate in the city of Washington. [359]

In an ex parte proceeding, as a sale of land for taxes under a special authority, great strictness is required. To divest an individual of his property against his consent, every substantial requisite of the law must be complied with. No presumption can be raised in behalf of a collector who sells real estate for taxes to cure any radical defect in his proceedings; and the proof of regularity devolves upon the person who claims under the collector's sale. [359]

Proof of the regular appointment of the assessors is not necessary. They acted under the authority of the corporation, and the highest evidence of this fact is the sanction given to their returns. [360]

The act of congress, under which the lot in the city of Washington in controversy was sold, required that public notice of the time and place of sale of lots, the property of non-residents, should be given by advertising "*once a week*" in some newspaper in the city, for three months. Notice of the sale of the lot in controversy was published for three months ; but in the course of that period, *eleven days* at one time, at another *ten days*, and at another *eight days* transpired, in succeeding weeks, between the insertions of the advertisement in the newspapers. "A week" is a definite period of time, commencing on Sunday and ending on Saturday. The notice was published, Monday, January 6th, and was omitted until Saturday, January 18th, leaving an interval of eleven days. Still the publication on Saturday was within the week preceding the notice of the 6th ; and this was sufficient. It would be a most rigid construction of the act of congress, justified neither by its spirit nor its language, to say that this notice must be published on any particular day of a week. If published once a week for three months, the law is complied with, and its object effectuated. [361]

No doubt can exist that a part of a lot may be sold for taxes, where they have accrued on such part. [361]

The lot on which the taxes were assessed, belonged to two persons as tenants in common. The assessment was made by a valuation of each half of the lot. To make a sale of the interest of one tenant in common for unpaid taxes valid, it need not extend to the interest of both claimants : one having paid his tax, the interest of the other may well be sold for the balance. [361]

The advertisement purported to sell " half of lot No. 4, in square No. 491;" and the other half was advertised in the same manner, as belonging to the other tenant in common. This was not a sufficient advertisement; and a sale made under the same was void. [362]

It is not sufficient that in an advertisement of land for sale for unpaid taxes, such

[Ronkendorff *vs.* Taylor's Lessee.]

a description is given as would enable the person desirous of purchasing to ascertain the situation of the property by inquiry; nor, if the purchaser at the sale had been informed of every fact necessary to enable him to fix a value upon the property, would the sale be valid, unless the same information had been communicated to the public in the notice. [362]

The tenth section of the act of congress provides that real property in Washington, on which two or more years' taxes shall be due and unpaid, may be sold, &c. In this section a distinction is made between a *general* and a *special* tax. Property may be sold to pay the former as soon as two years' taxes shall be due; but to pay the latter, property cannot be sold until *the expiration of two years after the second year's tax becomes due.* The taxes for which the property in controversy was sold, became due, by the ordinance of the corporation, on the 1st day of January 1821 and 1822. The *special* tax for paving was charged against the lot in 1820, and became due on the 1st of January 1821; but the ground on which it was assessed was not liable to be sold for the tax until the 1st of January 1823. The first notice of the sale was given on the 6th of December 1822, nearly a month before the lot was liable to be sold for the *special* tax of 1820. *Held,* that the whole period should have elapsed which was necessary to render the lot liable to be sold for the *special* tax, before the advertisement was published. [364]

FROM the circuit court of the district of Columbia, for the county of Washington.

This was an ejectment, brought by the defendant in error, in the circuit court, for the recovery of an undivided moiety of a lot of ground in the city of Washington, No. 4, in square No. 491.

The lessor of the plaintiff in the ejectment claimed to be entitled to the lot of ground as tenant in common with the heirs at law of Henry Toland, deceased; and on the 10th of March 1823, the half of the lot so held by the lessor of the plaintiff, was set up and exposed to public sale, as assessed to James N. Taylor, for taxes due to the corporation of Washington, for the years 1820 and 1821, amounting, in the whole, including the expenses of the sale, to the sum of forty-seven dollars and ninety-one cents; and Henry T. Weightman became the purchaser of the same. Mary Ronkendorff, the plaintiff in error, holds, as lessee, under the purchase at the tax sale.

In the circuit court the jury returned a verdict for the plaintiff in the ejectment; upon which judgment for his unexpired term in an undivided moiety of the lot as tenant in common was rendered in his favour, under the instructions of the court; to which several exceptions were taken.

[Ronkendorff vs. Taylor's Lessee.]

The plaintiff in the circuit court made out his title under the commissioners of the city of Washington, by regular conveyances to himself and Henry Toland deceased; and it was agreed that the plaintiff's lessee and Toland's heirs were under the same seised in fee as tenants in common of the premises, before the sale of the half lot for taxes.

The defendant proved the assessment of the taxes on the lot, by the production of the regular evidence, and that the taxes were assessed and the assessments were entered in the tax books, according to the forms usually pursued and authorised under the charter and ordinances of the corporation of Washington.

In the tax book of 1820, the assessment of lot No. 4, in square No. 491, appears arranged in columns in the established and accustomed forms; in which are placed the name and residence of the owner of the property; the number of the square; the number of the lot; its contents in square feet; the rate of assessment; the valuation; the valuation of the improvements; and the amount of the tax. The lot in controversy was entered in the tax book of 1820 thus:

| Names. | No. of square. | No. of lot. | No. of square feet. | Rate of assessment. | Valuation. | Total amount. | Amount of Tax. |
|---|---|---|---|---|---|---|---|
| Taylor, James N. | 491 | ½ 4 | 4202 | 40 | 1680 | 1680 | |
| | | | | | | 8 40 | |
| Paving tax, . | | | | | | 23 46 | 31 86 |
| Toland's heirs, Henry, | 491 | ½ 4 | 4202 | 40. | 1680 | 1680 | 8 40 |

In the tax book for 1821, the assessments of the lot were entered as follows:

| Taylor, James N. . . | 491 | ½ 4 | 4202 | 40 | 1680 | 1680 | 8 40 |
| Toland's heirs, Henry, | 491 | ½ 4 | 4202 | 40 | 1680 | 1680 | 8 40 |

It was also proved, on the part of the defendant in the ejectment, that the persons appointed to take the value of the property liable to assessments for taxes in the city of Washington, usually perform the duty in October in each

year, and make out annual lists of the same and of its as-
sessed value; which, after being laid before the board of ap-
peal empowered to correct the valuations, are returned to
the register of the corporation, with the corrections, if any,
in whose custody and office the original books containing
such lists and valuations are preserved; and the register,
by the authority of the corporation, then proceeds to digest
the tax books, year by year, in the form described, and trans-
fers into such tax books, from the original assessment books
so returned by the assessors, through the board of appeal, the
lists of the several species, descriptions and parcels of pro-
perty on which such taxes are imposed, and the assessed
valuation of the same, as corrected by the board of appeal;
extending in the proper column prepared for the purpose,
the amount of the taxes imposed upon the same respectively:
which tax books, given in evidence by the defendant, were
so made up and arranged by the register, in the years
1820 and 1821 respectively the general taxes therein re-
spectively assessed becoming due and payable, according to
the laws of the corporation, on the first day of January of
each year then next ensuing; that is to say, the general tax
(exclusive of the special tax for paving) for the year 1820,
on the 1st of January 1821; and that for the year 1821, on
the 1st of January 1822.

The court, on the motion of the plaintiff, instructed the
jury that the tax books, so given in evidence by the defen-
dant, were not competent evidence to prove the assessments
of the lot for the years 1820 and 1821, unless the defendant
first proved the regular appointment and authority of the as-
sessors whose books and returns were used in making up
and arranging the tax books as aforesaid; and also produced
the original books so returned by the assessors, through
the board of appeal, in each year respectively; to which
opinion and instruction of the court the defendant in the
circuit court excepted.

It was further proved on the part of the defendant, that
the collector of the taxes imposed by the corporation in third
and fourth wards, who was authorised to advertise and sell all
property in those wards liable to be sold by taxes, on Mon-

day the 6th of December, in the year 1822, the taxes on the lot in controversy being unpaid, caused to be inserted in the National Intelligencer, the following advertisement :

"Will be sold, at public sale, on Monday the 10th of March next, at 10 o'clock, A.M. at the City Hall, the following described property, to satisfy the corporation of Washington city for taxes due thereon up to the year 1821 inclusive, with costs and charges; unless previously paid to the subscriber, to wit : (and amongst others are the following.)

| To whom assessed. | No. of square. | No. of lot. | Amount. |
|---|---|---|---|
| James N. Taylor, | 491 | ½ of 4 | $16 80 |
| Paving tax, in'st 10 per cent. | | | 23 46 |
| Henry Toland's heirs. | 491 | ½ of 4 | 16 80 |

This advertisement was repeated, and republished, by the direction of the collector, on the several days following :

Friday, December 6th, 1822.—Saturday, December 14th, 1822.—Monday, December 16th, 1822.—Tuesday, December 17th, 1822.—Wednesday, December 25th, 1822.—Saturday, January 4th, 1823.—Monday, *January 6th,* 1823.— Saturday, *January* 18*th,* 1823.—Tuesday, January 21st, 1823.—Saturday, February 1st, 1823.—Tuesday, February 4th, 1823.—Thursday, February 6th, 1823.—Saturday, February 8th, 1823.—Tuesday, February 11th, 1823.—Wednesday, February 12th, 1823.—Thursday, February 13th, 1823.—Friday, February 14th, 1823.—Saturday, February 15th, 1823.—Monday, February 17th, 1823.—Tuesday, February 18th, 1823.—Wednesday, February 19th, 1823.—Saturday, March 1st, 1823.—Monday, March 3d, 1823.—Tuesday, March 4th, 1823.—Wednesday, March 5th, 1823.— Monday, March 10th, 1823.

The tenth section of the act of congress of the 15th May 1820, " to incorporate the inhabitants of the city of Washington, and to repeal all other acts heretofore passed," requires that real estate upon which two years' taxes are unpaid and in arrear, shall be advertised " once a week" for three months.

In pursuance of his authority and duty, and according to the tenor of the advertisement, the collector, on the 10th of

March 1823, set up at public sale *one half of the lot No.* 4, in square No. 491; and the same having been purchased by Henry T. Weightman, he paid the amount of the purchase money on the 11th of March 1823, to the collector, who thereupon executed and delivered to him a certificate under his hand, and executed in the presence of a witness; stating, that " at a sale made by me, as collector of taxes for the third and fourth wards of the city of Washington, on the 10th of March 1823, after due notice given as required by the acts of the corporation of said city, I set up and exposed to public sale, half of lot No. 4, in square No. 491, assessed to James N. Taylor, for taxes due the said corporation on the same, for the years 1820 and 1821, amounting in the whole, including the expenses of sale, to the sum of forty-seven dollars and ninety-one cents; when a certain Henry T. Weightman, being the highest bidder, became the purcha-ser thereof, at and for the sum of forty-seven dollars and ninety-one cents: the receipt of forty-seven dollars and ninety-one cents is hereby acknowledged, subject however to redemption as provided for by law.

The collector made a return of the sale in the following form :

| Sqr. | Lot. | To whom assessed. | Purchaser. | Tax. | Expen. | Am. sold for. |
|------|------|-------------------|------------|------|--------|---------------|
| 491 | ½ 4 | James N. Taylor, | H. T. Weightman, | 45 33 | 2 58 | 47 91 |

Mr Weightman entered upon the half lot so sold to him, and was possessed thereof more than two years after the day of sale; and afterwards, on the 5th of October 1826, receiv-ed in due form a conveyance in fee simple of the said half lot, which deed was duly recorded: the plaintiff's lessor, James N. Taylor, or any person for him or in his behalf, or any person whatever, not having at any time paid or in any manner tendered to Mr Weightman, or deposited in the hands of the mayor or other officer of the corporation, the money paid to the collector, or any part thereof.

The court, on the motion of the plaintiff, instructed the jury, that the advertisement of the property was defective and ille-gal in the several instances and particulars following, to wit :

[Ronkendorff vs. Taylor's Lessee.]

1. That, being published and republished as aforesaid, on the several days aforesaid, from the 6th of December 1822 to the 17th of March 1823, both inclusive, was not an advertisement "once a week" for three months, within the meaning of the tenth section of the act of congress, passed on the 15th of May 1820, "to incorporate the inhabitants of the city of Washington, and to repeal all acts heretofore passed for that purpose."

2. That the said corporation, or its collector of taxes acting under its authority, was not competent to advertise and sell any part of the said lot No. 4, in square No. 491, less than the entire lot, for the taxes so assessed on the same and due to the said corporation.

3. That the entire lot should have been assessed to the two tenants in common, Taylor and Toland ; and accordingly advertised and sold, as assessed to them.

4. That the said advertisement did not sufficiently designate what half of the said lot was charged with the said taxes, and was to be sold for the same; and did not purport to be an advertisement of an undivided moiety of the same for sale.

5. That the said corporation or its said collector had no power or authority to advertise the said lot for sale, till the last of the two years' taxes, for which the same was advertised for sale, had remained unpaid and in arrears for two years.

6. That the said advertisement does not purport to advertise the said lot for two years' taxes unpaid and in arrears.

7. That the said property so attempted to be sold, was not described with sufficient certainty, either in the advertisement or at the sale.

For which several defects, in the process of the assessment, advertisement and sale of the said lot, the said sale is illegal and void.

The defendant excepted to all these instructions and opinions of the court, and prosecuted this writ of error.

The case was argued by Mr Jones for the plaintiff in error; and by Mr Barrell and Mr Key for the defendant.

Mr Jones, for the plaintiff in error, contended; that the objections to the sale, which had been made for taxes, of the moiety of the lot, were untenable.

The taxes for which the sale had been made, had bee. regularly assessed under the authority of the corporation of Washington, and in conformity to law ; all the forms of the law and ordinances had been complied with in this assessment; the registering of the taxes; the advertisement; and the sale. He cited the charter and ordinances of the corporation in support of that position.

Mr Barrell and Mr Key, for the defendant, contended; that no proof had been made on the trial in the circuit court of the assessment of the taxes. The original books of the assessors should have been produced; and not the statements or abstracts from them made by the register. There may have been alterations made on appeals, and the original books of the assessors were the only legal evidence.

Laws for the sale of lands for taxes should be construed strictly, and their provisions should be strictly pursued. They are penal in their nature and effects. They go to wrest the property of the owner out of his hands by act of law; and every form which the law directs must be entirely and fully answered. 8 Wheat. 682.

The description of the property was imperfect, it did not designate the part of the lot to be sold with sufficient, if with any precision. If the corporation could divide a lot, which is denied, in order to comply with the law, there should have been an assessment of a half lot, and a description of it as such. To show that such a description was insufficient, cited, 1 Har. & Gill, 172.

The publication of the advertisement was not made in conformity with the provisions of the charter. The tenth section directs that the advertisement shall be inserted *once a week*, for three months ; but the case shows that this was not done. A period of twelve days had elapsed between the days on which the advertisement appeared; and no more than seven days should have passed. Once a week means once in every seven days; from one day, a particular day, to

[Ronkendorff *vs.* Taylor's Lessee.]

another, a corresponding day in the succeeding week. In every period of seven days, the insertion of the notice was not sufficient. If the advertisement commenced on one day in a week, it should have been repeated on the following corresponding day in the succeeding week; and so on until it had been inserted for three months.

The stipulation to pay rent quarterly, and the construction given to such covenants, illustrate and explain the position of the defendant in error. Would it be a compliance with an agreement to pay two quarters rent, quarterly, to make the payment at any time within six months, being two quarters? The payments are to be made under such covenant from quarter-day to quarter-day; and there is a breach, if the corresponding and succeeding quarter-day is suffered to pass without payment being made.

It was also contended; that the corporation had no authority to advertise the lot for sale until the last of the two years' taxes were due, for which the sale was to be made; and that the advertisement does not purport to expose the property to be sold for two years' taxes unpaid, and in arrears.

Mr Jones, in reply, argued, that the books of the assessors were not the original records of the assessment of the taxes. The returns are made to the register, and are entered by him; and his books exhibit regular and proper evidence of the charges and assessments on property in the city.

The register is a public, sworn officer; and the duties he performs are official acts, which are shown by his books.

The advertisement was inserted in every succeeding period of *seven* days, and this was a compliance with the law. It was a publication in every succeeding week, or space of seven days; and this was according to the letter of the charter.

When a term is fixed for the performance of an act, the whole time is allowed to do it; even to the last minute. So, to require advertising once a week, gives all the next week for the next advertising. On what succeeding day in the hebdomadal division of a week the advertisement shall appear, is not required; the name of the day of the week on which it must be published is of no moment; as the names

of the days of the week are arbitrary. It is the period of seven days, which the law regards as the space of a week; and in this case, as there was no period of fourteen days in which the notice of the sale was omitted, no longer period than twelve days having passed during the three months in which the advertisement did not appear, all was regular. As to the objection that the property sold had not been sufficiently described; as the powers of the corporation are to tax all interests in lands, the right to assess the tax on an undivided moiety of a tenant in common cannot be denied. Such was this case; and the advertisement described sufficiently an undivided half of the lot, of which Taylor was the owner with Toland's heirs.

Mr Justice M'LEAN delivered the opinion of the Court.

This writ of error is prosecuted to reverse a judgment of the circuit court for the district of Columbia.

The defendant in error brought an action of ejectment in the circuit court, to recover possession of lot No. 4, in square No. 491, in the city of Washington, half of which had been sold for taxes; and under the special instructions of the court, recovered a verdict and judgment. Several exceptions were taken to the competency of the evidence admitted on the trial, all of which appear in the bill of exceptions.

The first objection was taken to the competency of the proof of the assessment of the lot for taxation : the legality of the tax is not disputed.

To show the taxes assessed on the lot for the years 1820 and 1821, the defendant below produced in evidence the official tax books of the corporation, regularly made up by its officers; from which it appeared, that the plaintiff stood charged for 1820, with thirty-one dollars eighty-six cents for the tax on the half of lot No. 4, which contained four thousand two hundred and two square feet, valued at one thousand six hundred and eighty dollars. For the year 1821, he stood charged with eight dollars forty cents tax on the same lot. It appeared in proof, that the assessors appointed by the authority of the corporation, make a valuation of

property within the city, about the month of October, annually, and a return of their proceedings; which are laid before the board of appeal empowered to correct the valuations of the assessors, according to the laws and ordinances of the corporation. The assessment lists are then returned to the register of the corporation. The register then proceeds to make out the tax books, from the original assessment lists returned by the assessors, and corrected by the board of appeal. But it was contended, that the original lists of the assessors must be produced, and also proof of their appointment.

The court recognize the correctness of the principle contended for by the counsel for the plaintiff in error; that in an ex parte proceeding of this kind, under a special authority, great strictness is required. To divest an individual of his property, against his consent, every substantial requisite of the law must be shown to have been complied with. No presumption can be raised in behalf of a collector who sells real estate for taxes, to cover any radical defect in his proceeding; and the proof of regularity in the procedure devolves upon the person who claims under the collector's sale.

In this case, was it necessary to exhibit proof of the regular appointment of the assessors? They acted under the authority of the corporation, and the highest evidence of this fact is the sanction which it has given to their return. This return has been examined and corrected by the board of appeal, and was then handed over to the register. What better proof can be required of the assessor's authority to act.

The municipal powers of the corporation are conferred by a public law, and all courts are bound to notice them. Is it necessary in any case to go into the proof of the election of the mayor, or any of the other officers of this corporation? This has not been contended; nor can it be necessary to prove the appointment of an officer of the corporation, who has acted under its authority, and whose proceedings, as in the present case, have received its express sanction.

Did the court below err in requiring the original assessment lists to be produced.

These lists, under the law, were not conclusive on the

corporation, or on the person whose property was assessed. They were laid before the court of appeal for their correction and sanction, and they were then passed to the register.

If the assessment was not conclusive, or indeed binding on either party until sanctioned by the board of appeal; t.en, without this sanction, the assessment lists could not be received as evidence. These lists being handed over to the register, the law requires him to furnish a tax book to the collector, from the original assessment lists on file in his office, according to a prescribed form. This was done in the case under consideration ; and is not this book evidence ?

It was made out and arranged by an officer, in pursuance of a duty expressly enjoined by law. This not only makes the tax book evidence, but the best evidence which can be given of the facts it contains. In this book are stated, the name of the owner of the property, and his residence, if known ; the number of the square, the number of the lot, the square feet it contains; the rate of assessment, the valuation, and the amount of the tax. Only a part of these appear upon the assessment list.

This court think, that the circuit court erred in their instructions to the jury on both of the points stated. 1. In deciding that the proof was not competent to show the authority of the assessors : and, 2. That the official tax book, certified by the register, did not prove an assessment of the property.

The next point presented by the bill of exceptions is as to the legality of the notice of sale given by the collector.

The court instructed the jury, that the advertisement was defective in several particulars.

By the tenth section of the act of congress, which directs this proceeding; the collector is required to give public notice of the time and place of sale, by advertising once a week, in some newspaper printed in the city of Washington, for three months ; when the property is assessed to a person who resides within the United States, but without the district of Columbia.

Notice of the sale of the lot in controversy was given by the collector; first, in a newspaper published the 6th of De-

cember 1822, and last, in the same paper of the 10th of March 1823. These periods embrace the time the advertisement is required to be published : but it is contended, that the notice was not published once in each week, within the meaning of the act of congress.

In examining the dates of the publications, it appears that eleven days at one time transpired between them, and at another time ten days, at another eight.

These omissions, it is contended, are fatal : that the publication being once made, it was essential to the validity of the notice that it should be published every seventh day thereafter.

The words of the law are, " once a week." Does this limit the publication to a particular day of the week? If the notice be published on Monday, is it fatal to omit the publication until the Tuesday week succeeding? The object of the notice is as well answered by such a publication, as if it had been made on the following Monday.

A week is a definite period of time, commencing on Sunday and ending on Saturday. By this construction the notice in this case must be held sufficient. It was published, Monday, January the 6th, and omitted until Saturday, January the 18th, leaving an interval of eleven days ; still the publication on Saturday was within the week succeeding the notice of the sixth.

It would be a most rigid construction of the act of congress, justified neither by its spirit nor its language, to say that this notice must be published on any particular day of a week. If published once a week, for three months, the law is complied with, and its object effectuated.

The circuit court erred on this point in their instructions to the jury.

The court below also instructed the jury, " that the corporation, or its collector of taxes, acting under its authority, was not competent to advertise and sell any part of said lot No. 4, for the taxes assessed on the same."

By the law, not less than a lot, when the property upon which the tax has accrued is not less than that quantity, may be sold for the taxes due thereon.

No doubt can exist, that a part of a lot may be sold for taxes, where they have accrued on such part; it appears, therefore, that the circuit court have also erred on this point.

It is again objected, " that the entire lot should have been assessed to the two tenants in common, Taylor and Toland; and accordingly advertised and sold, as assessed to them.

The same valuation was placed on each half of this lot; so that so far as the assessment goes, it did not substantially differ from the instruction given. But the sale, to be valid, need not extend to the interest of both claimants. One having paid his share of the tax, the interest of the other may well be sold for the balance. The court therefore erred in their instructions on this point also.

In their fourth instruction the court say to the jury, " that the advertisement did not sufficiently designate what half of the said lot was charged with the said taxes, and was to be sold for the same, and did not purport to be an advertisement of an undivided moiety."

The law requires ". the number of the lots, (if the square has been divided into lots,) the number of the square or squares, or other sufficient or definite description of the property selected for sale, to be stated in the advertisement."

Congress had two objects in view in requiring this notice to be given. 1. To apprise the owner of the property; and, 2. To give notice to persons desirous of purchasing. These objects are important. It is necessary for the interest of the owner that he should be informed of a proceeding which, unless arrested by the payment of the tax, would divest him of his property. And it was of equal, if not greater importance, that the property should be so definitely described, that no purchaser could be at a loss to estimate its value.

It is not sufficient that such a description should be given in the advertisement as would enable the person desirous of purchasing to ascertain the ~ tuation of the property by inquiry. Nor, if the purchaser at the sale had been informed of every fact necessary to enable him to fix a value upon the property; yet the sale would be void, unless the same information had been communicated to the public in the notice. Its defects, if any exist in the description of the

property to be sold, cannot be cured by any communication made to bidders on the day of sale by the auctioneer.

What was the description given in the advertisement of the property in controversy? It was described to be half of lot No. 4, in square No. 491; and the other half was advertised at the same time under the same description, as belonging to Toland's heirs.

What would be understood by such a description. Suppose half a square had been advertised, it not having been divided into lots: would it convey that certainty to the public, as to the precise property about to be sold, that would enable any one to form an opinion of its value? No one could suppose that an undivided half of the square was to be sold under the notice; and which half was offered, could not be determined from the advertisement. Would this be a notice under the requisites of the law?

The value of a lot or half lot depends upon its situation. If one of the half lots front two streets in a populous part of the city, it is of much higher value than the other half. And this difference in value may still be greater, if the lot be situated near the middle of a square, fronting the street, and it be divided so as to cut off one half of it from the street.

It will thus be seen, that it is not a matter of small importance to the person who wishes to purchase, to know which half of a lot is offered for sale; and as any uncertainty in this matter must materially affect the value of the property at the sale, it is of great importance to the owner that the description should be definite. That an undivided moiety of a lot may be sold for taxes, has already been stated. But would any one understand that one half of lot No. 4 means an undivided moiety?

In all cities half lots are as common as whole ones; and when a half lot is spoken of, we understand it to be a piece of ground half the size of an entire lot, and of as definite boundaries.

The illustrations given show how great a difference in value may exist between halves of the same lot. And would not the preferable half be of much higher value than an undivided moiety of the entire lot?

In every point of view in which this notice can be consi-dered, under the act of congress, it was radically defective. The property should have been described, as an undivided half of lot No. 4. Under such a description, no one could be at a loss, as to its situation and value. The instructions of the circuit court on this point are not erroneous.

In their fifth instruction the court say, "that the corpo-ration, or its collector, had no power or authority to advertise the said lot for sale till the last of the two years' taxes for which the same was advertised for sale, had remained un-paid and in arrear for two years."

The tenth section of the act of congress, which governs this subject, provides, "that real property, whether improved or unimproved, in the city of Washington, on which two or more years' taxes shall have remained due and unpaid; or on which any special tax, imposed by virtue of the authority of the provisions of this act, shall have remained unpaid for two or more years after the same shall have become due, may be sold, &c."

In this section, a distinction is made between a general and a special tax. Property may be sold to pay the former, so soon as two years' taxes shall be due; but to pay the lat-ter, property cannot be sold until the expiration of two years after the second year's tax becomes due.

The taxes for which the lot in controversy was sold, were assessed in 1820 and 1821; and by the ordinance of the cor-poration they became due on the 1st of January succeeding the assessment.

A special tax for paving was charged against Taylor in 1820, and composed a part of the sum for which the proper-ty was sold.

This special tax became due on the 1st of January 1821; but the ground on which it was assessed, was not liable to be sold for the tax until the 1st of January 1823. On the 1st of January 1822 the same property was liable to be sold under the assessments of the years 1820 and 1821, for a general tax.

The first notice of the sale was given on the 6th of De-cember 1822, nearly a month before the lot was liable to be

sold for the special tax of 1820. Does this render the notice invalid?

This court think, that the whole period should have elapsed which was necessary to render the lot liable to be sold for special tax, before the advertisement was published. That the owner of the lot, by paying the tax at any time before the 1st of January 1823, would save it from the liability of being sold; and that until this liability had attached, he could not be chargeable with the expense of notice, nor could it legally be given.

The circuit court, therefore, did not err in their instruction to the jury on this point.

The court also instructed the jury, that the advertisement was defective, as it "does not purport to advertise the said lot for two years' taxes unpaid and in arrear." It states that the lot was offered for sale, "for taxes due thereon up to the year 1821." This was sufficient; for if the taxes were due, and the property was liable to be sold for them, it can be of no importance to the purchaser to have a more technical description of the tax than the notice contained.

The seventh instruction, "that the said property, attempted to be sold, was not described with sufficient certainty either in the advertisement or at the sale," is substantially embraced by the fourth instruction which has been considered.

For the errors specified, the judgment of the circuit court must be reversed, and the cause removed to that court for further proceedings, in conformity to this opinion.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that the cause be and the same is hereby remanded to the said circuit court, for further proceedings to be had therein, according to law and justice.