W. V. JACKSON, *Appellant*, v. EARLE GUSS *et al.*, *Appellees.*

No. 17,380.

SYLLABUS BY THE COURT.

1. SCHOOL LANDS—*Sale—Notice—Time Required.* The statute as it existed prior to 1909, providing that the county treasurer should offer school land for sale after giving "four weeks' notice thereof" in a newspaper, required that a publication should be made twenty-eight days before the day of sale.

2. ———— *Same.* A sale made under such statute without that requirement having been met was void, although four successive publications in a weekly paper had been made prior to the day of sale.

Appeal from Comanche district court. Opinion filed January 6, 1912. Affirmed.

*Fred S. Jackson*, and *Charles D. Shukers*, for the appellant.

*Fred B. Stanley*, and *Claude C. Stanley*, for the appellees.

The opinion of the court was delivered by

MASON, J.: The statute in relation to the sale of school land, as it existed prior to 1909, contained this provision:

"The county treasurer shall then offer the unsold portion of all school lands for sale at public auction, after giving four weeks' notice thereof in some newspaper published in such county; and in case no such paper is published in such county, then said notice shall

be given by posting the same at each voting precinct in such county at least four weeks previous to the sale." (Gen. Stat. 1901, § 6346.)

Under this statute an attempt was made to sell a tract of school land on January 2, 1906.  Notice of such sale was given by publication in a weekly newspaper in the issues of December 8, 15, 22 and 29, 1905, but not otherwise.  W. V. Jackson bid in the land for $1.25 an acre, and received a certificate of purchase from the county clerk.

The land was again offered for sale on January 15, 1907, upon a notice the sufficiency of which is not challenged, and was sold to Earle Guss for $3.50 an acre. Upon this sale a patent was issued in February, 1908, to Earle Guss and Clyde C. Guss.

In July, 1907, Jackson accepted from the county treasurer a return of the money he had paid, upon being told by him that the first sale was void.

In May, 1909, Jackson brought an action against the Gusses, claiming to be the equitable owner of the land.  Judgment was rendered against him and he appeals.

The natural and ordinary meaning of the language of the statute authorizing a sale of school land to be made "after giving four weeks' notice thereof in some newspaper" seems to be that a notice shall be published at least four weeks before the day of sale.  To give a four weeks' notice of an event is to give notice of it four weeks in advance of its happening.  If the statute had read "after giving twenty-eight days' notice" this meaning would be too clear for controversy.  The word "week" is usually regarded as referring to a period of seven consecutive days.  (30 A. & E. Encycl. of L. 447.)  Such doubt as there is in the present instance arises from an inclination to associate the word with the successive issues of a weekly paper. A statute requiring the publication of a tax notice "once in each week for four consecutive weeks prior to

the day of sale" is satisfied by an insertion in the four issues of a weekly paper preceding the day of sale, although the first publication may have been only 22 days before the date named. (*Tidd v. Grimes,* 66 Kan. 401, 71 Pac. 844.) The authorities are divided as to whether the use of the term "successive" would alone be sufficient to require that interpretation (29 Cyc. 1121), but the addition of the phrase "once in each week" places the matter almost beyond question. Here neither "successive" nor "once in each week" is used, and no reason is apparent for departing from the usual interpretation of the phrase "four weeks' notice." Moreover, in the same sentence the notice is required to be given, in any county in which no newspaper is published, "by posting the same at each voting precinct in such county at least four weeks previous to the sale." The use of the expression "four weeks" as the measure of a period—the equivalent of "twenty-eight days"—in the last clause of the sentence affords a fair presumption that the same meaning was intended where the phrase was first employed.

The district court, after finding the facts, formulated conclusions of law to the effect that the notice was sufficient, but that Jackson was precluded from recovering by his conduct in accepting the return of the money he had paid, and in other respects. The contention is made that the sufficiency of the notice is not open to inquiry, because the defendants have not served a notice such as the statute requires where an appellee asks a review of a ruling made against him by the trial court. (Civ. Code, § 578.) The several propositions stated as conclusions of law did not amount to separate and independent rulings; the effective decision of the court was that the plaintiff was not entitled to recover; the conclusions of law were essentially statements of the reasons for the decision. The judgment rendered being one which in our view necessarily resulted from an application of the law to the findings of fact, ought

Howell v. Cement Co.

not to be reversed because the reason assigned for it is different from that on which we base our determination.. (3 Cyc. 221; 2 Encyc. Pl. & Pr. 372.)    Moreover, the notice by the appellees that they. desired a review of the rulings made against them is not jurisdictional (*Jones v. Lampe*, 85 Kan. 401, 116 Pac. 619), and is substantially supplied in their brief.

The statute authorized no sale of the land, except after a four weeks' notice had been given.    Without such notice neither the county treasurer nor the clerk, nor both together, could bind the state by their action. The first publication having been made but 25 days before the time of the attempted sale, the whole proceeding was a nullity.

The judgment is affirmed.