[No. 22982.   Department Two.   May 20, 1931.]

W. W. CARPENTER, *Respondent,* v. OKANOGAN COUNTY, *Appellant.*[1]

*H. A. Davis* and *Marion Edwards,* for appellant.

*Smith & Schaaf,* for respondent.

[1]Reported in 299 Pac. 400.

BEELER, J.—This controversy involves the validity of a sale of public lands by the county commissioners of Okanogan county to the plaintiff. The sale as made is void for two reasons: (1) The county commissioners never acquired jurisdiction to make the sale; and (2) the notice of sale did not conform to the statute. The facts and circumstances of the purported sale may be briefly summarized:

Prior to and on September 4, 1929, Okanogan county owned approximately 27.18 acres of land which it used as a "poor farm," and, on that day, the board of county commissioners by resolution undertook to "sell all that part of the county poor farm that is in orchard." This orchard contains but 8.57 acres. On the following day, September 5, the board of county commissioners caused a notice to be published in three newspapers in Okanogan county, reading in part as follows:

"NOTICE OF INTENTION TO SELL PART OF COUNTY POOR FARM.

"It is the *intention* of the board of county commissioners of Okanogan county, Washington, to sell about *fifteen acres,* including the *orchard* and *barn* of the county poor farm, consisting of 27.18 acres in the northerly part of the northeast quarter of the northeast quarter of section 36, Township 34 North, Range 25 E. W. M. (a particular description of which appears in Volume 45 of Deeds, page 89, of the records of conveyances in the office of the county auditor); the portion to be sold to be taken from the southwesterly part of the farm;" (Italics ours.)

and fixed October 7, 1929, as the date on which the board of county commissioners would meet to hear and determine the advisability of making the sale. On October 7, there being no objections to the sale by any taxpayer of the county, the commissioners fixed November 30, 1929, as the date of sale, and the county

auditor, at the direction of the commissioners, published a notice of sale in three county newspapers: In the Tonasket Times, on October 25, November 1, 8, and 15, 1929; in the Omak Chronicle on October 25, November 1, 8, 15, and 22, 1929; and in the Okanogan Independent on October 26, 29, November 5, 9, and 16, 1929. The real estate as described in the *notice of sale* did not embrace *fifteen acres,* as in the *notice of intention to sell,* but merely 8.57 acres, and was described only by metes and bounds, as follows:

"SALE OF COUNTY PROPERTY.

"Under and by virtue of an order of the Board of County Commissioners of Okanogan county, Washington, on the 7th day of October, 1929, directing the sale of the following described real estate, towit:

"Beginning at a point S. 62° 00' E. and 492.5 ft. distant from NW corner of the NE¼ NE¼ Sec. 36, Twp. 34 N. Range 25 E. W. M.

"Call No. 1 thence S. 63° 00' E. 432 ft.
Call No. 2 thence S. 25° 00' W. 287.5 ft.
Call No. 3 thence S. 61° 15' E. 151 ft.
Call No. 4 thence S. 28° 00' E. 329 ft.
Call No. 5 thence S. 19° 00' W. 175 ft.
Call No. 6 thence N. 62° 15' W. 847 ft.
Call No. 7 thence N. 32° 00' E. 418 ft.
Call No. 8 thence N. 10° 30' W. 250 ft. to place of beginning containing 8.57 acres, together with an old vested water right of 4 acre feet per acre."

The call numbers did not appear as a part of the notice of sale.

On November 30, 1929, plaintiff purchased the property, paid the full purchase price of $8,001 in cash, received a deed, and took possession thereof. Plaintiff contends he learned of the irregularities of the sale for the first time on July 30, 1930, and, within a few days thereafter, demanded the return of his money, together with six per cent interest thereon from the date of sale. Payment being refused, plaintiff brought

this action to have declared void the sale and deed to him by Okanogan county, and to recover the purchase price of $8,001 and interest, together with the expenses of the care and maintenance of the orchard during the period of his possession.

The case was tried to the court, resulting in findings and conclusions favorable to the plaintiff, and a decree declaring void the sale and deed, and awarding plaintiff judgment for $8,001, with six per cent interest from August 2, 1930, the date on which the claim was made by him to the board of county commissioners, but denying plaintiff judgment for labor and materials furnished in caring for the orchard and land. Okanogan county is appealing from so much of the judgment as declares the sale and deed void and awards plaintiff $8,001 and interest. Plaintiff is cross-appealing from so much of the judgment as allows him interest from August 2, 1930, and denies him recovery for labor and materials furnished in caring for the orchard and lands.

The first inquiry, then, is, whether the board of county commissioners acquired jurisdiction to conduct the sale. The county commissioners undertook to sell approximately six and a half acres *less* than had been advertised in the notice of intention of sale. This, the board of county commissioners could not do. It is elementary that counties derive such powers as they possess, not from special charter, but from general laws, and may exercise such functions of local government and perform such duties as are imposed upon them by the sovereign—and no others. They are incapable of acquiring or holding real property except for public purposes, and such property, once acquired and devoted to a public use, can not be alienated without legislative authority, either express or implied.

The sale and the proceedings were had under Rem. Comp. Stat., §§ 4007-4010. Section 4007 authorizes and empowers the board of county commissioners to sell and convey county property "under the *limitations and restrictions,* and in the manner hereinafter provided." Section 4008 provides for the giving of notice of *intention* to sell public property and provides that

"Such notice so published shall *particularly designate and describe* the property or portion thereof which it is proposed to sell, and shall contain full notice that the board of county commissioners will meet on a certain day and hour of such day at their usual place of meeting to hear and determine the advisability of making such sale." (Italics ours.)

The purpose of this notice is to enable any taxpayer of the county to be present and be heard either in person or by counsel for or against such proposed sale. These being statutory jurisdictional steps, they must be strictly complied with.

Here, the county owned a poor farm which embraced 27.18 acres. It appears that the fifteen acres referred to in the notice of intention to sell, included the orchard, a fraction of an acre immediately adjacent to and east of the orchard on which stood an old barn, and some six acres consisting of a precipitous hillside, contiguous to and extending westerly from the orchard, but wholly unsuited for cultivation. Now, the taxpayers of Okanogan county might be satisfied to consent to the sale of the orchard including the barn and the six acres of unproductive land but might be opposed to a sale if limited to the orchard tract. Since the statute requires that the property shall be "particularly designated and described," we hold that the notice of *intention* to sell was not in strict compliance with the

statute, and, hence, the board of county commissioners acquired no jurisdiction to proceed with the sale.

In *State ex rel. Great Northern R. Co. v. Hershberger,* 117 Wash. 275, 201 Pac. 2, certain electors of Okanogan county filed a petition with the board of county commissioners seeking to incorporate a municipal corporation or town under the name of Molson. The petition contained an accurate description of the boundaries of the proposed town, but the notice published did not follow the description of the boundaries as contained in the petition. Passing on the question whether the county commissioners had acquired jurisdiction, we said:

"The single question presented here is whether the failure of the published notice to correctly describe the boundaries of the proposed corporation is fatal to the proceedings. It is our conclusion that it is so. The publication of the petition, together with notice of the time of the hearing thereon, is the jurisdictional process by which the persons affected by the incorporation are brought into the proceedings. The requirement that such publication be made is the positive mandate of the statute. The object of the requirement is to give to persons affected by the proposed corporation an opportunity to appear and oppose or favor the incorporation as they may deem their interests require, and manifestly this right is denied them unless they be given notice of the true boundaries of the proposed corporation. No question with respect to the forming of a municipal corporation is more important to the property holder than the question of its boundaries. It is conceivable that a property holder may have no objection to the incorporation if it included only the territory described in the notice given him, while he would seriously oppose it if it included less or different territory. To say, therefore, that a notice need not describe the territory is not only to deny the mandate of the statute, but it is to open the doors to opportunity for fraud."

24

■ The sale is void for another reason. The notice of sale did not conform to the statute. We have uniformly held that statutes regulating the sale of public property, or the execution of contracts, by county commissioners must be strictly construed. In the case of *State ex rel. Willars v. McConnaughey*, 33 Wash. 571, 74 Pac. 678, the board of county commissioners of King county undertook to sell certain lands which the county owned. The block number in the body of the notice was incorrect, although the correct block number appeared in the caption of the notice. In holding the notice insufficient to comply with the statute, we said:

"We conceive it to be a general and salutary proposition of law, that 'statutes by the authority of which a citizen may be deprived of his estate must have the strictest construction, and the power conferred must be executed precisely as it is given, and any departure from it will vitiate the proceedings; and this is so whether it be in the exercise of a public or private authority, whether it be ministerial or judicial.' Potter's Dwarris, Statutes and Const., pp. 146, 224, and 225, and notes; *Powell v. Tuttle*, 3 N. Y. 396; *Sherwood v. Reade*, 7 Hill (N. Y.) 431. . . . Sec. 308 of Bal. Code [§ 4010, Rem. Comp. Stat.], referring back to § 306 [§ 4008, Rem. Comp. Stat.], requires that the notice 'shall particularly designate and describe the property.' It is self-evident from a mere reading of the notice that the property in question was not so designated and described. Evidently the object of the law is to secure the best price possible for the property of the county offered at public sale, and that the public may know the particular property on which bids are to be invited at the time and place of sale, so that no evidence *aliunde* may be necessary for its identification. The accuracy and sufficiency of the notice must be tested by the statute. It was impossible for the learned trial court to say whether any one was misled by this discrepancy. . . . The powers of the county board and the county officials with refer-

ence to the disposition of the property in question were measured by the statutory provisions above noted. They cannot be deviated from or enlarged upon by any party or official in matters of substance, attempted to be exercised in that behalf, without invalidating the proceedings.''

The case of *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, involved the validity of a contract to construct a bridge across the Okanogan river. The statute requires the giving of notice as a condition precedent to the execution of the contract. No notice had been given. Passing on the question, we said:

''As boards of county commissioners themselves are but creatures of the statute, they must pursue and exercise the powers conferred on them in strict compliance with the statutes. Only by so doing, can they bind their principal. Contracts entered into in defiance of the manner pointed out by the statutes, or which have no support in the statutes, bind no one. Money paid out in pursuance of such contracts can be recovered back from any person into whose hands it can be traced. In fine, the proceedings, in so far as they affect the county, are nullities.''

In *Platter v. County of Elkhart,* 103 Ind. 360, 2 N. E. 544, the supreme court of Indiana had under consideration the sufficiency of a notice and order of sale relating to a county poor farm, and, in applying the rule of strict construction, said:

''The question which we have found the most perplexing one is whether the terms of sale are given either in the order or in the notice. A notice which omits to give the terms of sale cannot be sufficient, for the plain reason that the statute imperatively requires that the terms of sale shall be given. The courts can no more uphold a notice defective in one particular than they can a notice defective in many particulars. We can no more dispense with the requirements of the statute upon one material point than upon another, and we could with as much show of right dispense with

a designation of the time and place of sale as with a statement of the terms of sale. What the statute requires must be found in the notice, or it will be insufficient.

"It must be kept in mind that the county corporation is an artificial person, receiving all its powers from the statute which gave it existence. There is an essential difference between the rights of natural and artificial persons respecting the disposition of property. Natural persons have an inherent right of disposing of their property, while public corporations can only acquire and dispose of property by virtue of some positive law. Where the law designates the method in which a corporation may dispose of its property the method designated must be pursued, for there is no inherent right of disposition in corporate bodies. This general rule applies with peculiar force to officers placed in charge of the property of a governmental corporation. These officers have no direct private interest in the corporate property, and there is an absence of the influence of self-interest which impels men to vigilantly guard their private property. In order to supply, in some measure at least, the place of that influence, the statute has imposed restraints upon the authority of the corporate officers,—the commissioners,—and has cast upon them duties which if faithfully performed will prevent loss to the political corporation. . . . The rule is, as we have suggested it should be, quite strict in cases where sales of public property are made by public officers. The reason for the rule and its strict enforcement is that officers exercise a naked statutory authority, and have no other powers except such as are expressly or impliedly granted."

See, also, *Franzke v. Fergus County,* 76 Mont. 150, 245 Pac. 962; *Stowell v. Blanchard,* 122 Me. 368, 119 Atl. 866.

The sections of the statute heretofore noticed (§§ 4007 to 4010) apply to the notice of sale as well as to the notice of intention to sell. Section 4008 provides that the auditor shall give notice "by publica-

tion at least once a week for the term of four weeks in three different newspapers of such county, . . ." Section 4010 contains the following: "Provided, that such sale shall not be made in less than thirty . . . days from the date of the first publication of notice thereof."

" 'Term' as applied to time, signifies a fixed period, a determined or prescribed duration." *State ex rel. Hays v. Twitchell,* 9 Wash. 530, 38 Pac. 134.

"The word 'week' is usually regarded as referring to a period of seven consecutive days." *Jackson v. Guss,* 86 Kan. 280, 120 Pac. 353.

See, also, Volume 8, Words & Phrases, p. 7427.

The first insertion of the notice of sale in the Omak Chronicle on October 25, and in the Okanogan Independent on October 26, must be rejected, because the two last calls (calls 7 and 8) were not included in the description of the property as advertised and, hence, the property was not "particularly designated and described." The insertion of the notice in the Okanogan Independent did not comply with the statute, for the reason that the notice was not published "once a week for the term of four consecutive weeks." By excluding the publication which occurred in the Okanogan Independent on October 26, we have the following remaining: October 29, November 5, 9, and 16. It is apparent that one week did not elapse between the publications on November 5th and 9th.

In the case of *Wyant v. Independent Asphalt Paving Co.,* 118 Wash. 345, 203 Pac. 961, we held that under § 5775, Rem. Code, requiring that notice for bids for highway improvement "shall be published for at least two consecutive weeks previous to the date of letting," the statute means that there shall be two full weeks' notice between the first publication on January 25 and the time of letting the contract, and that two publica-

tions on January 25, and February 1, the award being made on February 7, was not a compliance with the statute. We there said:

"We have seen that the notice given by the county auditor was published on January 25, and February 1, that 'no other publication of said notice was made or had,' and that bids were to be, and were considered, and the contract actually awarded, on February 7. So it is at once apparent that the notice was not published for a period of two weeks previous to the date noticed for the letting of the contract, and the date on which the contract was actually let and awarded by the commissioners to the paving company. In other words, the period of publication was in no event for more than thirteen days, computing the period by the exclusion of the first day of publication and including the day of the awarding of the contract; putting aside in our present inquiry the question of whether or not the two publications were sufficient, as to number of publications.

"Counsel for the paving company argue that the use of the words 'two consecutive weeks,' in the above quoted portion of the law, means two publications, a week apart, and the letting of the contract immediately following the last of two such publications, satisfies the law. We have at least two decisions of this court which we think hold to the contrary touching a statute which reads almost literally, and which we regard as meaning exactly the same as this law, in so far as we are here concerned with their meaning."

See, also, *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099; *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61.

In discussing the same question, the supreme court of New York in the case of *City of Albany v. Goodman,* 197 N. Y. Supp. 739, said:

"The proceedings are regulated by this statute, the terms of which must be strictly complied with. It provides that a sale of real property by a second-class city, 'shall not be valid or take effect,' unless the sale be made at public auction 'after public notice to be pub-

lished once each week for three weeks in the official paper or papers.'

"The purpose of such publication is to give notice to all who might become purchasers, to the end that the full fair value of the property may be realized to the city. The intent of the statute was to require a given period for publication rather than to require three separate publications of the notice. If a publication once in each of three successive weeks be sufficient, a sale could be held in 1½ weeks approximately; the publication Saturday of the first week, on any day of the second week, and on Monday of the third week, and a sale on the next day, Tuesday, would be valid, though 11 days only had intervened between the first publication and the sale. We believe the intent of this statute is that there must be 3 weeks during which public notice of the sale is given prior to the sale; that the sale is not valid unless the first publication is had 21 days before the sale. Otherwise there is not a publication for three weeks. A week is 7 days."

Nor did the insertion of the notice of sale in the Omak Chronicle comply with the statute, the dates being November 1, 8, 15 and 22, for the reason that only twenty-nine days elapsed from the date of the first publication to the date of sale, and the statute requires that a minimum of thirty days shall elapse. Appellant contends that, inasmuch as the notice of sale published in the Tonasket Times strictly complied with the statute, and inasmuch as more than thirty days elapsed from the date of the first publication in *that* particular paper, hence the statute was complied with. We cannot follow such construction. The statute contemplates that the notice of sale shall be published in each of three newspapers for a period of not less than thirty days from the date of the first publication in each newspaper.

Passing now to the plaintiff's cross-appeal. The trial court gave plaintiff judgment for the sum of

$8,001, and interest thereon from the date he demanded its return, and this was all he was entitled to recover. It is true that the defendant had the use of the purchase money from the time of the sale on November 30, 1929, until the plaintiff filed his claim for a refund on August 2, 1930, but during that time the plaintiff had possession and use of the property. Moreover, the irregularities in the proceedings which invalidated the sale existed and were available to the plaintiff at the time his bid was accepted, and continued to be so available until the formal assertion of his claim which afterwards became the basis of the present suit. The plaintiff dealt with public officers with limited naked statutory powers. He was bound at his peril to ascertain the scope of their authority, and cannot base any claim on acts done by those officers in excess of their statutory authority. Individuals must take notice of the extent of the authority conferred by law upon a person acting in an official capacity. See *Reeve School Township v. Dodson*, 98 Ind. 497; *Axt v. Jackson School Township*, 90 Ind. 101.

Therefore, we conclude that the plaintiff is not entitled to recover for work and labor performed on the orchard. Plaintiff, however, is entitled to the apples and fruit which matured during the year 1930. In all other respects the decree appealed from is affirmed. It is so ordered.

TOLMAN, C. J., MILLARD, FULLERTON, and BEALS, JJ., concur.