THE STATE OF DELAWARE v. CHRYSLER CORPORATION, a Delaware corporation.

(*November* 18, 1959.)

CHRISTIE, J., sitting.

*Januar D. Bove, Jr.,* Attorney-General, for the State.

*Richard F. Corroon* and *Joseph H. Geoghegan* (of Berl, Potter and Anderson) for Chrysler Corporation.

Superior Court for New Castle County, Nos. 390-396, Inclusive, Criminal Actions, 1959.

CHRISTIE, J.:

Informations filed by the Attorney General charge defendant with violations of 19 *Delaware Code*, § 302 in the following respects:

(1) The named female employees were each employed and permitted to work by the defendant more than six days during the "calendar week" of March 30 to April 5, 1959.

(2) The named female employees were each employed and permitted to work by defendant more than ten hours a day more than once during the "week" of March 30 to April 5, 1959.

(3) The named female employees were each employed and permitted to work by defendant more than fifty-five hours in the "week" of March 30 to April 5, 1959.

All seven of the employees as to whom one or more of the above listed violations is alleged to have taken place were employed in a clerical capacity at the Chrysler Corporation Lenape Ordnance Depot in the vicinity of Newark, New Castle County, State of Delaware.

The calendar for the period in question is as follows:

1959

| March | | | April | |
|-------|---|---|-------|---|
| Sunday 29 | Monday 30 | Tuesday 31 | Wednesday 1 | Thursday 2 |
| Friday 3 | Saturday 4 | Sunday 5 | | |

Defendant's motions to dismiss state that the informations charge no offense contrary to law, since the period of time in question, March 30 to April 5, 1959, is not a "calendar week" or "week" within the meaning of 10 *Delaware Code*, § 302.

The pertinent parts of the statute are as follows:

"(a) Except as otherwise provided in this section, no female shall be employed or permitted to work in any establishment or office to which this chapter applies, more than 6 days in any one calendar week, nor more than 10 hours in any one day, or more than 55 hours in any one week.

"(b) Any female may be permitted to work 12 hours in one day only of each week, on the condition that her total hours of employment for any week shall not exceed 55 hours. If any part of the daily employment of any female is performed between the hours of 11 P.M. and 7 A.M. of the following day, no such female shall be employed or permitted to work thereat, more than 8 hours in any 24 hours." 19 *Delaware Code* § 302(a) and (b).

If "calendar week" and "week" as used in the statute refer to any period of seven days, the charges are properly

brought in their present form. But if "calendar week" and "week" as used in the statute refer to a period of seven days commencing at midnight on Saturday night and ending at midnight the following Saturday night, then the wording of the charges is faulty.

The question here raised is not a mere academic exercise which could be avoided by filing corrected informations. The work schedules of some of the employees involved were such as to indicate probable violation only if the State's interpretation of the statute is adopted, and the proper administration of the female labor law depends on a clarification of the statute.

Defendant contends that "calendar week" definitely refers to a period of seven days beginning with Sunday as shown on the calendar. This view finds support in a number of cases where the term has been used in connection with notice requirements. *Sonoma County v. Sanborn,* 1934, 1 *Cal. App.* 2d 26, 36 *P.* 2d 419; *Syversen v. Saffer, Sup.,* 1955, 140 *N. Y. S.* 2d 774. And the word "week" standing alone has been given a similar interpretation in connection with notice statutes. *Ronkendorff v. Taylor's Lessee,* 1830, 4 *Pet.* 349, 367, 29 *U. S.* 349, 361, 7 *L. Ed.* 882; *Medland v. Linton,* 1900, 60 *Neb.* 249, 82 *N. W.* 866, 869.

The State contends that the words "calendar week" and "week" as used in this statute mean any period of seven consecutive days.

The State cites 86 *C. J. S.* Time § 11, p. 841 and 842 to the effect that "week" may mean either a period of seven consecutive days, called a secular week, or it may mean the period from Sunday to Saturday, called a Biblical week, and the meaning of the word in a particular statute depends on its use and content. The State goes on to cite a number of notice cases where the word "week" was defined as any period of seven consecutive days. *Leach v. Burr,* 1903, 188 *U. S.* 510, 23 *S. Ct.* 393, 47 *L. Ed.* 567; *Jackson v. Guss,* 1912, 86 *Kan.* 280, 120 *P.* 353;

*Progressive Building & Loan Association v. McIntyre*, 1936, 169 *Tenn.* 491, 89 *S. W.* 2d 336 (*Tenn. Sup. Ct.* 1936) ; *Carpenter v. Okanogan County*, 1931, 163 *Wash.* 18, 299 *P.* 400. And in *United States v. Southern Pacific Company*, 8 *Cir.*, 1913, 209 *F.* 562 the Court so interpreted the word "week" as used in the statute limiting working hours.

It seems fair to summarize the cases as follows:

1. The term "week" as used in statutes most often refers to any period of seven consecutive days.

2. The term "calendar week" as used in statutes has been interpreted as referring to a period of seven days beginning immediately after midnight on Saturday, night.

3. However, the meanings of the terms "week" and "calendar week" are not fixed and they vary with the use thereof. These words must be interpreted with a view to the context in which they are used and the purposes behind the statutory provisions.

What is now 19 *Delaware Code*, § 302(a) and (b) stems from a statute enacted in 1913. 27 *Delaware Laws*, Ch. 175. This statute made reference to the hours per "week" and per day during which female employees may work. The first reference to "calendar week" was added in 1917. 29 *Delaware Laws*, Ch. 230. This amendment added the prohibition against employing females more than six days in any one "calendar week". The terms "calendar week" and "week" as used in this statute are apparently intended to refer to the same method of computing time.

The obvious intent of the statutes is to protect the health of female employees. Since there is no recorded legislative history to clarify the meaning and application of the terms here in question, it is necessary to look to the practical application of the statute to determine the probable intent of the legislature.

As to the six day week, under the State's interpretation, female employees could not be required to work more than six days in a row. Under defendant's interpretation, a female employee could be required to work up to 12 days in a row provided such work was evenly split by the start of a new "calendar week", and provided the employee had a day off before and after the 12-day period.

As to limitation of work days of more than 10 hours, under the State's interpretation a female working more than 10 hours in one day could not be required or permitted to put in another day of more than 10 hours until the seventh day after the first such day. Under defendant's interpretation, the period of days between one work day exceeding 10 hours and another such work day is not material provided only one such work day occurs during any given period of seven days beginning at midnight Saturday. Thus, under defendant's interpretation, an employee could put in more than 10 hours on Saturday and more than 10 hours again the next day, Sunday, provided the six days immediately before and the six days immediately after such days of employment are free of such work days.

A similar comparison could be made as to the third alleged violation—that dealing with the 55-hour work week. Under the State's interpretation, a covered employee could work no more than 55 hours in any seven-day period. Under the defendant's interpretation, the 55 hours of work allowed between one Saturday midnight and the next could be so concentrated as to allow more than 55 hours of work during a given seven-day period, provided such work period spans a Saturday and Sunday and provided compensating time off was allowed before and after the period of concentrated work.

The interpretation advocated by defendant limits the effectiveness of the statute in distributing working hours but it does not destroy it, since over a long period covered employees would be required to end up with about the same amount of time off.

However, an obvious and major purpose of the statute is to assure such distribution of working hours as to protect the health of female employees.

The practical application of the opposing interpretations leads me to conclude that the interpretation advocated by the State is in accord with the purpose of the statute and the intent of the General Assembly. I am of the opinion that the term "calendar week" as it appears in this particular statute is synonymous with the word "week" and both as here used refer to any period of seven days.

Thus, I conclude that female employees covered by the statute (1) may work not more than six days in any given seven-day period; (2) may work more than 10 hours a day only one day during any seven-day period and (3) may work not more than 55 hours in any seven day period.

The motions to dismiss are denied.