## REBECCA A. DORLARQUE *et al.*

*v.*

## CHARLES CRESS *et al.*

1. ESTOPPEL—*fraud necessary to an equitable estoppel.* The doctrine of equitable estoppel is based upon a fraudulent purpose and a fraudulent result, and if the element of fraud is wanting, there can be no estoppel.

2. There must be deception, and change of conduct in consequence, in order to estop a party from showing the truth.

3. SAME—*infants receiving money after they become of age, for land.* A party died intestate, but, prior thereto, requested that certain of his children should have specific tracts of land belonging to him, and that others should have certain specified sums of money, in lieu of their interest therein, and all who were of age carried out the request by conveying and receiving money respectively, and the money specified was paid to the guardian of the younger children, who, upon coming of age, received it from their guardian, but there was no evidence that, when they so received it, they were informed, or knew, that it was intended to be in lieu of their interest in the land of their father. After they had received the money, deeds were demanded of them for their interest in the land, which they refused to execute, and still retained the money, and made no offer to return it: *Held,* that there was no ratification of the arrangement proposed by their father, and that they were not estopped from claiming their interest in the land.

APPEAL from the Circuit Court of Montgomery county.

Mr. A. N. KINGSBURY, for the appellants.

Mr. JESSE J. PHILLIPS, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The only question presented by the several assignments of error on this record is, are the appellees, Francis Cress and Laura R. Cress, estopped from asserting their claim to the lands in controversy?

Absalom Cress died intestate, but, prior to his death, requested that his son James M. should have the lands in

controversy; that another son should have certain other lands, and that each of his remaining children should have $1000, in lieu of their interests in these lands. After his death, the children that were of age carried out his wishes, by making the necessary conveyances, and paying the money; and such as were then under age, with the exception of Francis and Laura R.. on arriving at the years of majority, also executed conveyances, and received the $1000. Francis and Laura R. were, at the time of their father's death, quite young, but the money intended for them, in lieu of their interests in the lands, was paid to their guardian, and by him loaned, upon interest, until a short time after they became of age, when it was paid to them. It does not appear precisely how long this was before the bill was filed, but the length of time was not important enough to cut any material figure in the case. After the money was paid, deeds were demanded of them for their interests in the lands, which they refused to execute. There is no evidence showing that, when the money was paid to and receipted by them, they were informed, or knew. that it was intended to be in lieu of their interests in the lands. They have since retained the money, and made no offer to return it.

It is insisted that, although the mere wish of their father was not obligatory, so as to divest them of their titles, yet that, by the acceptance of the money, they elected to ratify the arrangement, and are now estopped from asserting title inconsistent with it.

The obvious objection to this is, that, in order to constitute a ratification, the act relied upon as such must have been done with full knowledge of the rights of the party, and of the consequences of the act. *Davidson v. Young et al.* 38 Ill. 153; *Schnell v. Chicago,* id. 382. Had it appeared that these appellees, in receiving the money, were informed, or knew, that it was to be accepted instead of their interests in these lands, the principle contended for might apply; but we can not indulge in presumptions that such was the fact, in the

absence of full proof. The fact that, after receiving the money, on being requested to make the conveyances, they refused to do so, is very strong proof that the money was not received by them with the understanding that it was in lieu of their interests in the lands.

There is no principle of estoppel which can apply here. No act done or acquiesced in by them, during their minority, short of a wilful and deliberate tort—not even the solemnity of making and sealing a conveyance—could divest them of title, unless ratified by them after their minority ceased. It is said, "the doctrine of equitable estoppels is based upon a fraudulent purpose and a fraudulent result. If, therefore, the element of fraud is wanting, there is no estoppel, as, if both parties were equally cognizant of the facts, and the declaration or silence of the one party produced no change in the conduct of the other, he acting solely upon his own judgment. There must be deception, and change of conduct in consequence, in order to estop a party from showing the truth." *Davidson* v. *Young et al. supra,* and authorities there cited. See, also, Bigelow on Estoppel, 484, *et seq.*

Now, here, there is no pretense that any one acted differently from what he otherwise would, in consequence of the acts of these parties after they had attained their majority. They practiced no deception—held out no delusive hopes. The utmost that can be said is, they disregarded the wishes of their father, and have received more money from his estate than they are entitled to have. This falls far short of an equitable estoppel to title to realty.

The decree is affirmed.

*Decree affirmed.*