34  299|
39  681|

[No. 4702.   Decided March 12, 1904.]

ANTHONY W. BALL et al., Respondents, v. HARRISON
CLOTHIER et al., Appellants.[1]

COURTS—JURISDICTION TO SET ASIDE ORDERS OF TERRITORIAL PRO-
BATE COURT—JUDGMENTS—VACATION AT SUIT OF MINOR AFTER AT-
TAINING MAJORITY.    Under Bal. Code, § 5153, authorizing the su-
perior court to vacate any judgment for error shown by a minor
within twelve months after arriving at full age, and Const., art.
27, § 10, providing that all proceedings in the territorial probate
courts shall pass into the jurisdiction of the superior courts, the
superior court has complete jurisdiction to review errors of the
old probate court, at the suit of minors brought within twelve
months after arriving at full age.

SAME—BILL OF REVIEW WITHOUT STATUTORY AUTHORITY.    In
such a case, the court would have jurisdiction to review such a
judgment for apparent error or fraud by bill of review, whether
expressly authorized by statute or not.

EXECUTORS AND ADMINISTRATORS—SALES—NECESSITY OF NOTICE
TO MINOR HEIRS.    An administrator's sale of real estate made un-
der order of court is void when the minor heirs interested in the
estate were not represented by a general guardian, and no guardi-
an ad litem was appointed for them, and no notice given them as
required by Code 1881, § 1497.

SAME—CURATIVE STATUTE—DEFECTS RELATING TO JURISDICTION.
Bal. Code, § 6474, intended to cure defects and irregularities in
administrators' sales, does not cure defects relating to the juris-
diction of the court over the persons of the parties in interest,
owing to the failure to give notice to the minor heirs or to appoint
a guardian for them, the statutory requirements therefor being
mandatory.

SAME—ESTOPPEL BY PETITION TO DISCHARGE ADMINISTRATOR AND
FOR DISTRIBUTION—SALE BY PREDECESSOR WHOSE ACCOUNT WAS SET-
TLED DURING MINORITY.    Where the final account of former ad-
ministrators involved an illegal sale of real estate, void for want
of notice to minor heirs, and the succeeding administrator collect-
ed no money and had done nothing and filed no account during
his administration, the minors upon arriving at majority are not
estopped to question the validity of the sale by joining in a peti-

[1]Reported in 75 Pac. 1099.

tion to discharge the last administrator and accepting a distribution of the estate then remaining, which consisted wholly of real estate, when it does not appear that they were informed of their rights or accepted the same in lieu of the whole, and there was no changed relation to the property affected.

SAME—PURCHASERS IN GOOD FAITH AT ADMINISTRATOR'S SALE— LIEN FOR AMOUNT OF PURCHASE PRICE AND TAXES—NONE FOR IMPROVEMENTS.    Upon setting aside a void administrator's sale at the suit of heirs after arriving at full age, purchasers in good faith should be allowed a lien upon the property for the amount of the purchase price paid to and received by the estate, with legal interest, and also for the taxes paid by them, but not for permanent improvements, since under Bal. Code, § 5511, the value of improvements can only be set off against damages.

Appeal from a judgment of the superior court for Skagit county, Neterer, J., entered January 26, 1903, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, setting aside an administrator's sale of real estate, and denying defendants a lien for the purchase price and taxes paid.  Affirmed as to the invalidity of the sale, and reversed as to the denial of defendants' lien.

*Thos. Smith, Million & Houser,* and *Gable & Seabury,* for appellants.

*E. W. Taylor* and *Govnor Teats,* for respondents.

MOUNT, J.—This appeal is prosecuted from a decree of the lower court adjudging certain probate proceedings in the estate of J. B. Ball, deceased, void, and setting aside an administrator's deed for the south half of the northeast quarter, and the north half of the southeast quarter, of section 24, township 35 north, of range 4 east.  Defendants claim title to different parts of said real estate under said deed.

The facts shown by the record are substantially as follows:  Jesse B. Ball died on February 4, 1889, leaving an

estate in Skagit county and other places. His widow, Caroline Ball, survived him. Also three minor children survived him, as follows: Anthony W. Ball, then aged nine years; Zula Matilda Ball, then aged seven years; and Zenora Kate Ball, then aged five years. This latter named child died the same year. Deceased also left two grown children by a former marriage, viz., Emma Welsh and Warren T. Ball. A few days prior to his death, Mr. Ball made his will, by the terms of which he gave to Emma Welsh $5; to Warren T. Ball, certain real estate in Vancouver, B. C.; to his widow, Caroline Ball, certain personal property; and to his three minor children, all the remainder of his property, share and share alike. He directed that all his debts be paid from the portion devised to said minors, and that "if, at the time of his death, the said minor children be not twenty-one years of age, the legacy given to them, except so much thereof as shall be necessary for their support and education, shall be retained by said executors upon trust, to be paid to them when the youngest shall have attained the age of twenty-one years, and in case of the death of one of said minor children prior to said division, the portion bequeathed to said child shall be divided among the two remaining." J. E. Smith and A. T. Marshall were named as executors, and $300 was bequeathed to each as compensation for acting as such executors.

On February 18, 1889, the will was admitted to probate by the probate court of Skagit county, in the then territory, and the executors named in the will were appointed to carry out the provisions thereof. They were required to file a bond in the sum of $12,000. A joint and several bond was executed and filed by said executors, which bond was, by order of the probate court, approved and entered of record. The executors thereupon qualified by taking

oath of office, and letters testamentary were issued to them, and they entered upon the discharge of their duties. The estate was thereafter appraised, showing some $7,200 of personal property, and real estate of the value of $5,641. But the real estate in question in this action does not appear in the appraisement. Notice to the creditors was published. On September 24, 1889, a semi-annual account of the executors was filed, showing the moneys collected to that time and the claims allowed. No order appears to have ever been made by the court upon this report.

On November 18, 1889, Mr. Marshall, one of the executors, filed with the probate court his resignation, without attempting to comply with the statute; and on the same day the said court entered an order accepting the resignation, and discharging Mr. Marshall as executor, and releasing the sureties on his official bond. Thereafter, on December 5, 1889, the other executor, Mr. Smith, filed his resignation, and published a notice thereof, as required by law, to the effect that he had filed his account as executor and resignation of his trust, and that the same would come on for hearing on January 28, 1890, at two o'clock P. M., "and all persons interested in said estate are notified to appear and show cause why the said account shall not be settled and said resignation accepted." On the 28th day of January, 1890, no one objecting, the resignation was accepted and Mr. Smith discharged as executor, and the sureties on his official bond were released. At the same time and place Caroline Ball filed her petition asking the appointment of said Smith and one Harrison Clothier as administrators of the estate. No notice of this application was given to any one, and the court, in the same order which discharged Mr. Smith as executor, appointed him, together with Mr. Clothier, as administrators *de*

*bonis non,* and fixed their bonds as such administrators at $12,000. A joint and several bond was filed and approved by the court.

Thereafter, on March 25, 1890, these administrators presented their petition, containing allegations substantially as required by statute, for the sale of the real estate now in question. On the next day the probate court issued an order directing all interested parties to appear on April 23, 1890, and show cause why the said real estate should not be sold. A copy of this order was published four times in a newspaper, but four weeks' time did not elapse between the first publication and the date of the hearing. A copy of the notice was served on the widow. No notice was given to the minors, and no guardian *ad litem* was appointed for them.

On April 23, 1890, at the time set for the hearing, no one appearing to contest the petition, an order was made directing the sale of the real estate. No time or place for the sale was fixed by the order. The administrators thereupon fixed the time, and due notice thereof as required by law was given. The sale was held on May 20, 1890, at public auction, and the property was sold to John P. Millett, one of the appellants, for $9,100. A return of the sale was made and filed in the probate court on the 24th day of May, 1890, which was on Saturday. An order was made on the 26th day of May, 1890, confirming the sale. Thereupon an administrator's deed was executed and delivered to the purchaser. The purchase price was paid and accounted for to the estate. After Mr. Millett purchased the property, he conveyed the same to Mr. Murdock, one of the appellants, who platted a part of the land into town lots, and afterwards conveyed it to the Grand Junction Land Company, which company sold some of the lots to

the other defendants, who improved them, and are now in possession thereof.

In 1891 the administrator J. E. Smith died, and thereafter the surviving administrator, H. Clothier, administered upon the estate until September 18, 1897, when his final account was approved and he was discharged. E. C. Million was thereupon appointed administrator in his stead. Mr. Million appears to have done nothing with the estate until March 29, 1901, when, upon his petition after the minor heirs had become of age, he was discharged, and all that remained of the estate was distributed to the respondents Anthony W. Ball and Zula Matilda Ball Manning. Up to March 1, 1893, no guardian *ad litem* was ever appointed for the said minors, Anthony W. Ball and Zula Matilda Ball; they were not served with any notice of any of the petitions, or any of the proceedings in the course of administration up to that time, although during all of said times they were residents of Skagit county, were named as minor heirs, and were the sole beneficiaries of the real estate being administered upon. Subsequent to March 1, 1893, they were represented in all proceedings by a guardian *ad litem* appointed by the court.

After becoming of age and on May 10, 1901, these heirs executed a power of attorney to Warren T. Ball, authorizing him "to grant, bargain, sell, convey, mortgage, or dispose of any and all real estate within the state of Washington in which we may have any interest." The said Warren T. Ball, acting under said power of attorney, joined in the petition of Million for a discharge as administrator, and for a distribution of the estate. Mr. Million was thereupon discharged and the estate distributed to the respondents, who brought this action within one year after arriving at their majority, seeking to review the orders and errors of the probate court in direct-

ing a sale of the land in question. They allege, in substance, that the executors were wrongfully discharged; that the administrators were not legally appointed; that no notice of any of the proceedings in the probate court was ever given to them, and no appearance was made by them; that the administrators conducted the sale fraudulently, and in all their dealings with the estate, up to and including the sale of the real estate in question and the confirmation of the sale, the administrators acted in fraud of the rights of plaintiffs; and that the probate court had no jurisdiction to make the orders complained of, all of which orders are set out in the complaint. They prayed that the order of sale, and all proceedings had thereunder, be set aside and held for naught, and that they be decreed to be the owners of the property, free from any claims of defendants by reason of their purchase and possession of the property.

After motion to make the complaint more definite and certain, and to strike certain portions thereof, and demurrers had been overruled, defendants answered separately, denying generally the allegations of the complaint and alleging, that the probate court proceedings were regular; that the administrator's sale in all respects complied with the law; that Millett, the purchaser of the land at administrator's sale, conveyed the property to William Murdock, that Murdock thereafter platted a half of it into town lots, streets, and alleys, known as Grand Junction Land Company Addition to Woolley, and that all the defendants are bona fide purchasers and claim title through Murdock; that the full purchase price at administrator's sale, viz., $9,100, was paid and the amount accounted for in the due course of administration of the estate, and that said sum was the reasonable value

of the land at that time; that since said time defendants
have made valuable improvements on the lands, and have
paid the taxes thereon since 1890; that in June, 1901,
after becoming of age, the plaintiffs joined in a petition
to discharge the administrator acting at that time, and
are therefore estopped to maintain this action; and that
the sale of the property, even if irregular, is valid under
the curative act of 1890. Defendants pray for a dis-
missal of the case, but, in the event that the sale be de-
clared void, that they be subrogated to the rights of
creditors to the extent of the purchase price of the prop-
erty, together with the amount paid for taxes, assessments,
and improvements. The reply denied generally all the
allegations of the answer.

Upon a trial the lower court refused to find actual fraud
on the part of the administrators, but found and con-
cluded, that the appointment of Smith and Clothier as
administrators of the estate was void; that the order of
sale of the real estate was made without jurisdiction; that
the order confirming the sale, and the administrator's
deed of the property, were void; that the plaintiffs are
the owners in fee simple, and entitled to the possession,
and are entitled to a decree quieting their title against
the defendants; and refused the relief prayed for by de-
fendants.

Many questions are presented on this appeal. They are
all argued at length in the voluminous briefs filed herein,
We pass all of them by without further notice except
such as we deem material and necessary to a determina-
tion of the case. Appellants' first point is that the com-
plaint fails to state a cause of action, for the reason that
there is no provision in our statute authorizing an action
by a minor, after reaching his majority, to review alleged

errors and irregularities in orders and decrees in a judicial proceeding carried on during minority. It is argued that, since there is no statutory authority for such proceeding, therefore this must be held to be an action to remove a cloud and quiet title; and, since one of the indispensable allegations in an action to quiet title is that plaintiffs are either in possession of the premises, or that the same are unoccupied and vacant, and since the complaint shows that plaintiffs are out of possession, and that defendants "are in possession of the real estate and exclude plaintiffs herein therefrom,"—the demurrer should have been sustained.

Section 5153, Bal. Code, clearly authorizes an action to vacate or modify a judgment or order of the superior court, and §§ 5156, 5157 provide the form and procedure in such actions. Section 5153 is as follows:

"The superior court in which a judgment has been rendered, or by which or the judge of which a final order has been made, shall have power, after the term (time) at which such judgment or order was made, to vacate or modify such judgment or order: . . . 5. For erroneous proceedings against a minor or person of unsound mind, when the condition of such defendant does not appear in the record nor the error in the proceedings; . . . 8. For error in a judgment shown by a minor, within twelve months after arriving at full age."

Appellants contend that this section relates exclusively to the superior court, and has no relation whatever to the proceedings in inferior courts, or to a proceeding in probate, and that proceedings to review an erroneous order or judgment must be brought in the court in which the order was entered. This statute was enacted in territorial days when the probate court was an independent inferior court. The orders complained of were made by the territorial probate court. When the constitution was

adopted, the superior court was vested with general juris-
diction such as was exercised by the territorial district
courts, and also with jurisdiction in probate matters, and
the probate court as an independent tribunal was abol-
ished. It follows—if appellants' position is correct—that
there is now no tribunal which has jurisdiction to review
erroneous orders entered in the old probate court. This
position cannot be maintained. The constitution, at § 10
of art. 27, provides that, when the superior courts are or-
ganized, all records and proceedings in probate court shall
pass into the jurisdiction and possession of the superior
courts, "and the said court shall proceed to final judgment
or decree, order or other determination in the several mat-
ters and causes as the territorial probate court might have
done if this constitution had not been adopted." Under
this provision the superior court has complete jurisdiction
in all matters in which the old probate court had, and
certainly now the superior court, under § 5153, may
vacate and set aside orders made by it in the course of
its probate jurisdiction. If appellants' position that the
action must be brought in the same court is correct, the
superior court, being the successor of the probate court,
must be held to be the same court.

Appellants further contend that, because there was no
statutory provision for the old probate court to vacate and
set aside its orders and judgments, none exists in the
superior court for that purpose. Independent of the in-
herent powers of all courts to vacate and set aside their
own orders and decrees for fraud, and independent of
statute where the common law is in force and unmodified,
a bill of review is the proper method of obtaining the
vacation or annulment of an order or decree for errors
apparent upon the face of the record or for fraud. 1
Black, Judgments (2d ed.), § 301.

It follows, therefore, whether there is or is not a statute upon the subject giving the superior court jurisdiction to review judgments for apparent error or fraud, being a court of general equity jurisdiction, it has that power. If this were held to be an action to remove a cloud and quiet title, and for possession, it could be maintained under the provisions of §§ 5500–5508, Bal. Code. See, *Povah v. Lee*, 29 Wash. 108, 69 Pac. 639; *Brown v. Calloway, ante,* p. 175, 75 Pac. 630. The lower court therefore properly denied the demurrer.

Passing by many irregularities argued in the briefs relating to the appointment and qualification of the administrators, we shall consider the main question, which relates to the validity of the sale of the real estate. The court below properly refused to find any actual fraud in fact on the part of the administrators in the conduct of the sale. The petition for the sale of the land substanitally complied with the statute, but there was no service, or attempt at service, of the petition or notice of the hearing upon the minor heirs, except an insufficient publication directed to all interested parties. No guardian *ad litem* was appointed for them; they had no general guardian; no appearance was made by any person for them upon the hearing as to the necessity for the sale. The court nevertheless directed the sale of the land. The sale was made on the day provided in the notice. A return thereof was subsequently made, and, without an opportunity for an objection, was confirmed and a deed issued. The purchase price was paid, and the estate had the benefit thereof.

Appellants contend that the statute relating to notice and sale was merely directory; that the proceedings are *in rem;* and, since the court had jurisdiction *in rem*

the sale was valid notwithstanding irregularities. Conceding that the probate court had jurisdiction of the real estate for the purpose of administration upon the appointment of executors or administrators, as was said in *Ackerson v. Orchard,* 7 Wash. 377, 34 Pac. 1106, 35 Pac. 605, still, before the heirs who were the beneficiaries under the will could be divested of their title, the substantial requirements of the statute must be complied with. The statute in force at the time the order was made provided that, when a petition for the sale of real estate was filed, the court should make an order directing all interested persons to appear at a time and place specified, to show cause why the order of sale should not be granted, and that this order should be personally served upon all persons interested in the estate at least ten days before the hearing, or published four successive weeks in a newspaper. Sections 1494, 1495, Code of 1881.

"If any of the devisees or heirs of the deceased are minors, and have a general guardian in the county, the copy of the order shall be served on the guardian. If they have no such guardian, the court shall, before proceeding to act on the petition, appoint some disinterested person their guardian for the sole purpose of appearing for them and taking care of their interests in the proceedings." Section 1497, Code of 1881.

This provision for the appointment of a guardian for minors was mandatory. If the court had jurisdiction over the estate, it was also necessary that it acquire jurisdiction over the persons of the minor heirs before proceeding to divest them of their title, because the statute expressly required the minor heirs to be represented. They could not waive this right, and the court could not waive it by non-compliance with the statute. *Fiske v. Kellogg,* 3 Or. 503. The case of *Bloom v. Burdick,* 1 Hill 130,

37 Am. Dec. 299, is in point upon this question. It was there said, at page 139:

"The surrogate undoubtedly acquired jurisdiction of the *subject matter,* on the presentation of the petition and account; but that was not enough. It was also necessary that he should acquire jurisdiction of the *persons* to be affected by the sale. It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right, until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into court; and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act where the subject matter was not within its cognizance."

When the statute required the appearance of the minor heirs by guardian *ad litem* before the court should make the order of sale, it was necessary for such appearance, even if the proceedings were *in rem.* The order of sale was therefore without the authority of law, and was void as to the minor heirs. *Wallace v. Grant,* 27 Wash. 130, 67 Pac. 578.

Appellants contend that, under the curative act of 1890, § 6474, Bal. Code, the heirs were not entitled to avoid the sale in this case. That section is as follows:

"In case of an action relating to any estate sold by an executor, administrator or guardian, in which an heir or person claiming under the deceased, or in which the ward or any person claiming under him, shall contest the validity of the sale, it shall not be voided on account of any irregularity in the proceedings; Provided, It appears,— (1) That the executor, administrator, or guardian was ordered to make the sale by the probate or superior court having jurisdiction of the estate; (2) That he gave a bond which was approved by the probate or superior judge, in case a bond was required upon granting the order; (3)

That he gave notice of the time and place of sale, as in the order and by law prescribed; and (4) That the premises were sold accordingly, by public auction, and the sale confirmed by the court, and that they are held by one who purchased them in good faith."

It would appear from this section that, if all the requirements named were complied with, other *irregularities* would be insufficient to avoid the sale, and, if all the requirements named were not fulfilled, then the sale may be avoided. In *Wallace v. Grant, supra,* we held that, where a petition to mortgage or sell real estate was not verified, and failed to show that the personal estate was exhausted, or that the same was insufficient to pay the debts of the administration, the probate court did not acquire jurisdiction to make an order of sale or mortgage. In *Dormitzer v. German Savings & Loan Society,* 23 Wash. 132, at page 192, 62 Pac. 862, we held that this section related only to irregularities, and did not go to the jurisdiction of the court. And in *Hazelton v. Bogardus,* 8 Wash. 102, 35 Pac. 602, where the petition, in describing the lands to be sold, was so defective that the lands could not be located, it was held that this section did not cure the defect. In *Ackerson v. Orchard, supra,* where the court had jurisdiction, and the proper notice was given, and all the provisions of § 6474, *supra,* were complied with, it was held that other irregularities did not avoid the sale. As we have seen above, the probate court had no jurisdiction to order the sale by reason of the absence of notice to the minor heirs and failure to appoint a guardian *ad litem* for them, and therefore, under the authorities above named, the curative act does not apply, and the minors may therefore avoid the sale.

Appellants also contend that, because the plaintiffs, after arriving at their majority, joined in a petition for

the discharge of E. C. Million as administrator, and for a distribution of the estate, and accepted the estate remaining, they are now estopped to question the validity of the sale. A number of authorities are cited to the effect that the settlement by a final account, distribution, and discharge of the administrator is an adjudication of all questions which were or should have been involved, and so long as such final settlement stands, interested parties are bound by it. This is no doubt the correct and just rule, and, as to all questions which were or should have been adjudicated at that time, these respondents are bound, but the final account of E. C. Million is not shown to include the sale of the land in question, or the proceeds thereof. In fact, we are unable to find any final account filed or acted upon at the final discharge of Mr. Million. The record shows that nothing had been done by him during his administration of the estate. He was simply appointed, held the office for about three years without collecting or paying out any money, was discharged, and the property remaining, which consisted wholly of real estate, was distributed to the respondents.

The final account of the former administrators, which involved the sale and the proceeds thereof, had long since, and during the minority of the respondents, been finally settled, so far as the administration was concerned. It was therefore not necessary for Mr. Million to include in his final account matters which had already been settled. Nor was it necessary or proper for the court, upon the final discharge of Mr. Million, upon its own motion to open up matters which had already been determined, and which were not then called to its attention, and this was not attempted to be done. Furthermore, it is not shown that the respondents, at the tme they accepted a part

of the estate, were informed or knew of their rights, or intended to accept this part in lieu of the whole. Nor is there any showing of any deception by the respondents, or changed relation to the property by appellants. The principles of estoppel therefore do not apply. *Schnell v. Chicago*, 38 Ill. 382, 87 Am. Dec. 304; *Dorlarque v. Cress*, 71 Ill. 380.

Appellants contend that, in case the title to the real estate is avoided in this action, they should each be awarded their proportionate share of the original purchase price paid to the estate, and the taxes paid since sale, and the value of the improvements placed thereon. This relief was denied them by the court below. We think, in justice and equity, the relief prayed in that regard, except for permanent improvements, should have been allowed. The court, in *Sengfelder v. Hill*, 21 Wash. 371, 58 Pac. 250, in considering the question of permanent improvements on real estate, held that, under the provisions of § 5511, Bal. Code, where defendants held under color of title, in good faith, as these appellants do, the value of such improvements could only be set off as against damages, and no recovery could be had therefor. Hence appellants are not entitled to recover for the items of improvements. The land was purchased from the estate in good faith by the appellants and their predecessors in interest, and the purchase price thereof was paid into the estate, and used in the administration thereof, and these respondents received the benefit. They should not, under such circumstances, be permitted to avoid the sale without repaying the purchase price, and, upon the principles announced in *Packwood v. Briggs*, 25 Wash. 530, 65 Pac. 846, and subsequent cases, appellants should have a lien upon the realty for the items paid for taxes, for the rea-

son that the taxes paid were necessary to protect the real estate from seizure and sale by the state, and these payments inured to the benefit of the respondents.

The judgment appealed from is therefore modified in respect of the purchase price paid for the lands at administrator's sale, which was $9,100, and in respect of taxes paid by appellants since that time. The cause is remanded with instructions to the lower court to determine the respective amounts due each of the appellants, with interest at the legal rate, and to make the amounts thereof preferred claims against the said estate; appellants to recover their costs.

HADLEY, ANDERS, and DUNBAR, JJ., concur.