[No. 16548.  Department One.  January 19, 1922.]

E. V. WYANT, *Respondent,* v. INDEPENDENT ASPHALT PAVING COMPANY, *Appellant,* COUNTY COMMISSIONERS OF YAKIMA COUNTY, *Respondents.*[1]

COUNTIES (43)—CONTRACTS—PROPOSALS OR BIDS—NOTICE—SUFFICIENCY.  Under Rem. Code, § 5755, requiring that notice of a call for bids for highway improvement "shall be published for at least two consecutive weeks previous to the date of letting" the contract, means that there shall be two full weeks' notice between first publication and time of letting the contract.

JUDGMENTS (171) — OPERATION AND EFFECT — RECITALS AS TO SERVICES.  The recital of the record of the board of county commissioners upon the letting of a public contract that "due notice of same has been given," is *prima facie,* but not conclusive, evidence of sufficiency of statutory publication, and is rebuttable by evidence.

COUNTIES (43)—CONTRACTS—PROPOSALS FOR BIDS—NOTICE.  Rem. Code, § 5755, providing that notice of the letting of a highway improvement contract shall be published for at least two consecutive weeks previous to the date of letting, cannot be construed as directory with respect to such two weeks' publication, because of the fact the statute further adds, "and in such other manner as the board may see fit to direct."

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered April 18, 1921, upon an agreed statement of facts, in an action for an injunction.  Affirmed.

*Roberts & Skeel* and *J. J. Geary,* for appellant.

*Sidney Livesey* and *Richards, Fontaine & Gilbert,* for respondents.

PARKER, C. J.—This action was commenced in the superior court for Yakima county by the plaintiff, Wyant, seeking the enjoining of the defendant paving company and the county commissioners of that county from proceeding with the construction work and the

[1]Reported in 203 Pac. 961.

incurring of indebtedness under a contract between the commissioners and the paving company for the construction of a paved highway by the latter, in local improvement district No. 16, of that county. The plaintiff, being the owner of lands sought to be charged by special assessment to aid in paying for the proposed improvement, seeks such injunctive relief upon the theory that the contract was unlawfully entered into between the commissioners and the paving company, in that the notice inviting bids therefor was not published for the period required by law prior to the awarding of the contract.

The commissioners, having been advised, a short time after the awarding and entering into of the contract, that it was unlawfully made because of insufficient publication of notice inviting bids therefor, answered, admitting the facts as plead by the plaintiff, and prayed for the annulling of the contract and the enjoining of the prosecution of work thereunder by the paving company, in substance as prayed for by the plaintiff. The paving company filed its answer and cross-complaint, wherein, by denials and affirmative allegations as against both the plaintiff and the commissioners, it seeks to have the contract adjudged to be a legal and binding one, and also seeks injunctive relief as against the commissioners to prevent their interference with the prosecution of the work. The case was submitted to the superior court upon an agreed statement of facts, and resulted in a judgment as prayed for by the plaintiff and the commissioners; from which judgment the paving company has appealed to this court.

The controlling facts may be summarized as follows: On January 24, 1921, after proceedings duly had resulting in the creation of the local improvement district, the commissioners duly passed a resolution in substance that sealed bids for the construction of the pro-

posed improvement within the district, in accordance with plans and specifications theretofore prepared, would be received at their office in the court house ''up to the hour of 2 p. m. on the 7th day of February, 1921,'' and directed the county auditor to publish ''due and legal notice'' thereof accordingly.

''Pursuant to said resolution, the county auditor caused to be published in the Yakima Morning Herald notice that on Monday, February 7, 1921, at the hour of 2 p. m., bids would be received in accordance with said resolution; . . . the first publication of said notice was made on January 25, 1921, and the second publication of said notice was made on February 1, 1921, and no other publication of said notice was made or had; . . .''

On February 7, 1921, the commissioners met at their office in pursuance of their resolution and the notice of the county auditor, duly published as they then supposed; and received bids for the construction of the improvement. Several bids were then received, opened and considered by the commissioners. One of the bids was that of the paving company; which bid, being the lowest, was accepted and approved as such by the commissioners, and the contract was then awarded to the paving company accordingly. In the record of the commissioners' action in that behalf, they recited that, ''it appearing further that due notice of same has been given''—referring to the publication of the notice, by the county auditor, of the time and place of receiving bids.

Thereafter on February 11, 1921, the commissioners entered into a formal written contract with the paving company for the construction by it of the improvement. Thereafter a surety bond was furnished by the paving company as provided by the contract, which bond was approved by the commissioners. A short time thereafter, the paving company commenced work upon the

improvement. The paving company paid the premium necessary to procure its surety bond and incurred other expenses in connection with the improvement. The record, however, is silent as to the amount of expense incurred by the paving company in procuring its surety bond, or otherwise, in connection with the contract, prior to the commissioners' notifying the paving company that they had been advised by the prosecuting attorney of Yakima county of the illegality of the contract because of the insufficiency, as to time, of the publication of the auditor's notice inviting bids for the construction of the improvement. It seems certain, however, that comparatively very little had been done by the paving company in the incurring of expense by it, prior to such notice, which would result in ultimate loss to it. Thereafter the commissioners adopted and made a resolution and order canceling the contract and providing for the inviting of new bids for the construction of the improvement. This action was commenced in the superior court on March 12, 1921, which, it will be noticed, was only one month after the making of the contract, and, we may add, as we think the record shows, before the paving company had done anything looking to the prosecution of the work that would ultimately result in other than a small loss to it.

This local improvement district was created and the proposed improvement therein is to be constructed under our law relating to the improvement of roads at the expense of property benefited; so we are to look to that law for the authority of the county commissioners in the inviting of bids and the awarding of contracts for the construction of such improvements. It is therein provided that bids for the construction of such improvements shall be invited by the commissioners by causing the county auditor to publish a notice therefor and that—

"The notice shall be published for at least two consecutive weeks previous to the date of letting, in one or more daily or weekly papers published and of general circulation in the county, and in such other manner as the board may see fit to direct." (§ 5755, Rem. Code.)

We have seen that the notice given by the county auditor was published on January 25 and February 1, that "no other publication of said notice was made or had," and that bids were to be, and were, considered, and the contract actually awarded, on February 7. So it is at once apparent that the notice was not published for a period of two weeks previous to the date noticed for the letting of the contract, and the date on which the contract was actually let and awarded by the commissioners to the paving company. In other words, the period of publication was in no event for more than thirteen days, computing the period by the exclusion of the first day of publication and including the day of the awarding of the contract; putting aside in our present inquiry the question of whether or not the two publications were sufficient, as to number of publications.

Counsel for the paving company argue that the use of the words "two consecutive weeks," in the above quoted portion of the law, means that two publications, a week apart, and the letting of the contract immediately following the last of two such publications, satisfies the law. We have at least two decisions of this court which we think hold to the contrary touching a statute which reads almost literally, and which we regard as meaning exactly the same as this law, in so far as we are here concerned with their meaning. In *Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099, there was involved the validity of a sale of real estate by administrators under our probate statute, which required personal service of an order to show cause, or that such

order "shall be published at least four successive weeks in such newspaper as the court shall order" (§ 1495, Code of 1881; § 1500, Rem. Code), as the jurisdictional process enabling the court to order an administrator to make a sale of real property. The order there involved was not served personally. Its publication was relied upon. The publication was made once in each of four successive weeks, but four weeks time did not elapse between the first publication and the date stated in the show-cause order fixing the time of hearing upon the question of whether or not the sale should be ordered. Because of the want of the lapse of four weeks between the first publication and the date fixed for the hearing, it was held that the court failed to acquire jurisdiction to order the sale, and it was accordingly set aside at the suit of certain minor heirs. It may be thought that the holding of the sale to be illegal was because of want of appointment of a guardian *ad litem* for the minors, but manifestly the illegality of the sale was, in its last analysis, rested upon the want of jurisdictional process in the inception of the sale proceedings; that is, want of proper service by publication of the order to show cause why the sale should not be made; since the court would not have power to appoint a guardian *ad litem* for the minor heirs, until it first acquired jurisdiction over them by the original process of an order to show cause, personally served or duly published. In *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61, the meaning of the same statute was drawn in question and the ruling in *Ball v. Clothier, supra,* adhered to, Judge Ellis, speaking for the court, observing:

"The respondent's first contention must be sustained. The statute governing the decree of distribution in probate proceedings, Rem. & Bal. Code, § 1589

(P. C. 409, § 595), by reference to the statute governing the sale of real estate by an executor or administrator, provides that the decree shall be made only after notice of hearing has been 'personally served on all persons interested in the estate at least ten days before the time appointed for the hearing of the petition, or shall be published at least four successive weeks in such newspaper as the court shall order.' Rem. & Bal. Code, §§ 1499, 1500 (P. C. 409 §§ 395, 397). In this case, though, the notice was published four times, the first publication was on May 18, 1911, and the hearing was set for June 12, 1911. Less than four weeks elapsed between these dates. We have held such a notice insufficient to give the court jurisdiction to make an order of distribution. *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099; *Teynor v. Heible,* 74 Wash. 222, 133 Pac. 1, 46 L. R. A. (N. S.) 1033.''

Now the language of these two statutes, touching the time of publication, except as to one word, in so far as we are here concerned with its meaning, is literally the same. The probate statute reads ''at least four successive weeks,'' while this road statute reads ''at least two consecutive weeks.'' It seems difficult to conceive of two different words more completely synonymous than ''successive'' and ''consecutive.'' It follows that the meaning of these two statutory provisions is exactly the same, except that one relates to four and the other to two ''successive'' or ''consecutive'' weeks. Our decisions determining the meaning of this language in the probate statute manifestly are controlling in our present inquiry.

Contention is made that, since the law does not provide for the making or preserving of any record of the publication of the notice inviting bids, the recital by the commissioners in their record that ''it appearing further that due notice of same has been given,''—referring to the publication of the notice inviting the bids—becomes a conclusive determination that such

notice was duly given. We may concede, for present purposes, that such recital in the record of the commissioners is *prima facie* evidence that such notice was duly given, and possibly would become conclusive of that fact had we no other evidence upon the question; but manifestly such recital is not conclusive in the sense that it is not rebuttable by evidence. And since we find in the agreed statement of facts that "no other publication of said notice was made or had," whatever presumption may have resulted from the recital in the commissioners' record is entirely overcome, the same as if there had been absolute conclusive proof to the contrary of the recital.

Contention is made that the above quoted provision of the road statute, calling for publication of notice of receiving and opening of bids, is in any event only directory. We cannot so view the statute. Its language is plainly mandatory in form in so far as the publication of the notice for two consecutive weeks is concerned. The fact that the statute further provides that the commissioners may give such other notice as they see fit does not make this mandatory provision directory. We are not here called upon to determine just how this defect in the publication would affect the right of Wyant or the commissioners to assert the invalidity of the contract had they delayed their challenge to the sufficiency of the publication of the notice until after the completion of the improvement. It is not impossible that at such a time some element of estoppel might have in at least some measure stood in their way of making any such claim; but that is not this case. Here, injunctive relief was sought with a fair degree of promptness; and for the courts to refuse such relief, under the circumstances shown in this case, would be to leave the commissioners free to ignore this

plain mandatory provision of the law, and invite bids for the construction of improvements of this nature in any manner they might choose.

The judgment is affirmed.

FULLERTON, MITCHELL, BRIDGES, and TOLMAN, JJ., concur.