[No. 28090. *En Banc.* January 25, 1941.]

KING COUNTY et al., *Respondents,* v. THE CITY OF SEATTLE, *Appellant.*[1]

A. C. Van Soelen and John A. Homer, for appellant.

B. Gray Warner, Lloyd W. Shorett, and Burkheimer & Burkheimer, for respondents.

Skeel, McKelvy, Henke, Evenson & Uhlmann, amicus curiae.

[1]Reported in 109 P. (2d) 530.

DRIVER, J.—King County sold to Edward Burkheimer and wife, in the manner provided by statute, nine lots in the city of Seattle, which the county had previously acquired for taxes. The county treasurer's deed was delivered to the purchasers, who brought suit to quiet title, joining King County therein as a party plaintiff. A trial to the court resulted in a decree in favor of the plaintiffs, from which defendant city of Seattle has appealed.

The city's interest in the lots consists solely of an unpaid balance on local improvement assessments levied against them prior to the sale. It is conceded that a valid sale would cut off the lien of the assessments; but the city claims that the sale was void because the publication notice of sale was not legally sufficient.

The applicable statute, Rem. Rev. Stat. (Sup.), § 11294 [P. C. § 6882-133] (Laws of 1937, chapter 68, p. 233, § 1), provides that, in the sale of real property which a county has acquired for taxes, "It shall be the duty of the county treasurer . . . to publish *once a week for three consecutive weeks* a notice of the sale of such property . . ." (Italics ours.) In the case at bar, the notice of sale was published in a weekly newspaper on Thursday, November 16th; Friday, November 24th; and Thursday, November 30, 1939. (Thursday, November 23rd, was Thanksgiving, a legal holiday, and the newspaper did not go to press that day.) The sale date was Thursday, December 7, 1939. The sole question for determination is whether such publication of notice sufficiently complied with the requirements of the statute. To answer the question, it is necessary that the statutory phrase "once a week for three consecutive weeks" be examined and construed.

The term "three consecutive weeks" has been

held by this court to mean a period of twenty-one consecutive days, during which the publication must actually be operative. In other words, where publication for "three consecutive weeks" is required, there must be a lapse of not less than twenty-one days between the day of first publication of the notice and the day of sale or other appointed act or event. See *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099; *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61; *Wyant v. Independent Asphalt Paving Co.,* 118 Wash. 345, 203 Pac. 961.

In the instant case, there was publication of the notice for "three consecutive weeks" under the rule announced in the cases just cited, because twenty-one days elapsed between November 16th, the day of first publication, and December 7th, the date of sale. What, then, is the meaning of "once a week," the other words of the statutory phrase under consideration?

Appellant maintains that "once a week" means at regular intervals of seven days; that exactly seven days, no more or no less, must intervene between any publication and the next ensuing publication; or, to put it in another way, that each succeeding publication after the first one must be made on the same day of the calendar week as the first publication.

The authorities agree that a week must comprise seven consecutive days, but they are not in accord as to what particular days the week shall comprise; or, differently stated, they do not agree as to the specific day on which the first week of the prescribed period of publication shall be deemed to commence. By far, the most common methods of computation are the calendar week, which is considered to begin on the Sunday preceding the day of first publication and to extend through the next ensuing Saturday,

and what has been called the statutory week, which is deemed to commence on, and to include, the day of first publication and to run for seven consecutive days. These two methods are exemplified, respectively, by the cases of *Ronkendorff v. Taylor,* 4 Peters (U. S.) 349, and *Raunn v. Leach,* 53 Minn. 84, 54 N. W. 1058.

While this court has not, in so many words, declared its adoption of the calendar week, the statutory week, or any other system of computation, the cases of *Ball v. Clothier, In re Hoscheid's Estate,* and *Wyant v. Independent Asphalt Paving Co.,* cited *supra,* plainly imply a preference for the statutory-week method of computation. As has been pointed out, it was held in those cases that the required number of weeks for publication of a notice must elapse between the day of first publication and the day of sale, "weeks," in that sense, being construed to mean successive periods of seven consecutive days each. This clearly indicates that publication was held to begin, and to become effective, on the day of first publication. The first week of publication therefore was deemed to comprise, and to include, the day of first publication and the next ensuing six consecutive days thereafter.

On the other hand, the rule of the three cited cases can not be reconciled with the calendar-week method of computation. Under that method, the first week begins on the Sunday next preceding the day of first publication and ends on the following Saturday. Thus, for example, in a case where publication once a week for two consecutive weeks is required, if publication were made on two consecutive Fridays, then, under the calendar-week method, the second week of publication would be deemed to end on the Saturday following the second publication; and, publication for the prescribed period having been completed,

the sale could legally be held on the next ensuing Monday, although only ten days, rather than the fourteen days required by the rule, would have elapsed between the first publication and the day of sale.

But whatever may be the method of computation employed, the great majority of the cases hold that it is sufficient if there be at least one publication during each of the weeks into which the prescribed period of publication has been bracketed, and that it is not essential for each publication to be made upon the same day of the calendar week. The leading case in the enunciation of this rule is *Ronkendorff v. Taylor,* above cited. There, the supreme court of the United States had under consideration an act of Congress which required publication of notice of sale of real property "once a week . . . for three months." The publications of notice effected under the statute were not all made on the same day of the calendar week. It was there contended, as it is by the appellant in the case at bar, that, once the first publication had been made, it was essential to the validity of the notice that subsequent publications should follow regularly every seventh day thereafter. This contention was answered as follows in the *Ronkendorff* case:

"The words of the law are, 'once a week.' Does this limit the publication to a particular day of the week? If the notice be published on Monday, is it fatal to omit the publication until the Tuesday week succeeding? The object of the notice is as well answered by such a publication, as if it had been made on the following Monday.

"A week is a definite period of time, commencing on Sunday and ending on Saturday. By this construction the notice in this case must be held sufficient. It was published, Monday, January the 6th, and omitted until Saturday, January the 18th, leaving an interval of eleven days; still the publication on Saturday

was within the week succeeding the notice of the sixth.

"It would be a most rigid construction of the act of Congress, justified neither by its spirit nor its language, to say that this notice must be published on any particular day of a week. If published once a week, for three months, the law is complied with, and its object effectuated."

Other jurisdictions which have held that each publication need not be on the same day of the calendar week are: New York, in *Steinle v. Bell*, 12 Abb. Pr. (N. S.) 171—see, also, *Wood v. Knapp*, 100 N. Y. 109, 2 N. E. 632; Massachusetts, in *Bachelor v. Bachelor*, 1 Mass. 256; Pennsylvania, in *Stoever's Appeal*, 3 Watts & S. (Pa.) 154; Minnesota, in *Raunn v. Leach*, 53 Minn. 84, 54 N. W. 1058, *supra*; Nebraska, in *Burr v. Finch*, 91 Neb. 417, 136 N. W. 72; New Hampshire, in *Cass v. Bellows*, 31 N. H. 501, 64 Am. Dec. 347; Kansas, in *Fidelity Nat. Bank & Trust Co. v. Cloninger*, 142 Kan. 558, 51 P. (2d) 35; Louisiana, in *In re New Orleans*, 52 La. Ann. 1073, 27 So. 592, *Hansen v. Mauberret*, 52 La. Ann. 1565, 28 So. 167—see, also, *Keife v. La Salle Realty Co.*, 166 La. 553, 117 So. 588, and *Champion Box Co. v. Manatee Crate Co.*, 75 F. (2d) 340.

The following three cases are the only cases which have been cited as sustaining appellant's position: *In re King*, 14 Fed. Cas. 502, 7 N. B. R. 279; *Dayton v. Mintzer*, 22 Minn. 393; *Hernandez v. His Creditors*, 57 Cal. 333.

The first case, *In re King*, which was decided by the United States district court for the southern district of New York in 1872, squarely supports appellant's contention. It should be noted, however, that, although that case involved the construction by the Federal court of a New York statute, the New York

state courts have adopted a different rule. *Steinle v. Bell* (1872), *supra*; and see *Wood v. Knapp* (1885), *supra*.

In *Dayton v. Mintzer*, the second case, a Minnesota statute required publication of a notice " 'for three weeks successively.' " It was held that, although the notice had been published in a daily newspaper, it was not necessary that it should appear in each daily issue thereof for three weeks, one publication each week being deemed sufficient. A statement in the opinion favorable to the contention of the appellant in the present case was clearly *obiter dictum*, being so regarded by the supreme court of Minnesota in its later case of *Raunn v. Leach*, 53 Minn. 84, 54 N. W. 1058, *supra*. This appears from the following quotation from the *Raunn* case:

"The counsel for respondent . . . cite *Dayton v. Mintzer*, 22 Minn. 393, and *Greenwood v. Murray*, 28 Minn. 120, (9 N. W. Rep. 629,) in support of the order appealed from. In the opinion in *Dayton v. Mintzer* and in the syllabus to *Greenwood v. Murray* may be found suggestions that the statutory requirements providing for the publication of certain legal notices could only be complied with by separating the several weekly publications by intervals of exactly seven days. *In neither of these cases was there a question of this character, and the suggestions in reference to it were purely obiter.* It follows that the question must be treated as an open one in this jurisdiction. . . . In the case at bar the summons was published for the first and second times on the third day of the biblical week, and thereafter it appeared upon either the fourth or fifth days of such week, a Sunday intervening between each publication. It was also published once in each of the six consecutive weeks commencing on the day of its first appearance in the paper, Tuesday, February 7th. We are unable to hold that the statute was not complied with. The summons appeared once in each of

the six periods of seven days' duration beginning upon and which followed consecutively the date just mentioned. We construe the statute as authorizing just such a publication. The statutory week must commence upon the day of the first publication, and there is nothing in the language used which would justify the conclusion that because the publication must be 'once in each week' the day of the first publication must determine the day on which each subsequent publication is to be made, and that exactly seven days must intervene between each." (Italics ours.)

*Hernandez v. His Creditors,* the third case cited in appellant's behalf, involved a statute which provided for publication of notice "at least once a week, for four successive weeks." The court there attached special importance to the words "at least," and stated in the opinion that, because of them, the *Ronkendorff* case might be distinguished.

Appellant vigorously asserts, however, that the case of *Carpenter v. Okanogan County,* 163 Wash. 18, 299 Pac. 400, supports its position and is controlling.

In that case, the county commissioners undertook to sell a portion of the county poor farm under a statute which required publication of notice of sale in three different newspapers in Okanogan county " 'at least once a week for the term of four weeks,' " and that the sale should not be made " 'in less than thirty . . . days from the date of the first publication . . .' " The sale was held to be void for three reasons: (1) The commissioners did not have jurisdiction to make the sale because the real property had not been adequately described in the published preliminary notice of intention to sell; (2) the publication of notice in the Okanogan Independent was not sufficient; (3) the publication in another of the three newspapers was defective in that only twenty-nine days had elapsed between

the day of first publication and the sale date. Appellant seems to rely mainly upon the following statement made in the opinion with reference to reason two as above recited:

"The insertion of the notice in the Okanogan Independent did not comply with the statute, for the reason that the notice was not published 'once a week for the term of four consecutive weeks.' By excluding the publication which occurred in the Okanogan Independent on October 26 [invalid because of defective real property description], we have the following remaining: October 29, November 5, 9, and 16. *It is apparent that one week did not elapse between the publications on November 5th and 9th.*" (Italics ours.)

Neither in the quoted excerpt nor elsewhere in the opinion is it said that notice must be published at exact intervals of seven days, or that each publication must be on the same day of the calendar week; and no case is cited in support of such a requirement. What the *Carpenter* case held was that the publication of notice in the Okanogan Independent had not complied with the applicable statute because there were four publications during the first three weeks of the prescribed period and no publication during the fourth week. That this was the case under what is known as the statutory-week method of computation, is clearly shown by the following diagram, in which the dates of publication are indicated by enclosing the numbers representing such dates in brackets:

CARPENTER CASE, STATUTORY-WEEK COMPUTATION
(October-November, 1929)

|  | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. | Mon. |
|---|---|---|---|---|---|---|---|
| First Week .... | [29] | 30 | 31 | 1 | 2 | 3 | 4 |
| Second Week .. | [5] | 6 | 7 | 8 | [9] | 10 | 11 |
| Third Week ... | 12 | 13 | 14 | 15 | [16] | 17 | 18 |
| Fourth Week .. | 19 | 20 | 21 | 22 | 23 | 24 | 25 |

Applying the same diagrammatic method of illustration to the publication of notice in the case at bar, it at

once becomes apparent that there was one publication in each week under the so-called statutory system of computation:

INSTANT CASE, STATUTORY-WEEK COMPUTATION

(November–December, 1939)

|  | Thurs. | Fri. | Sat. | Sun. | Mon. | Tues. | Wed. |
|---|---|---|---|---|---|---|---|
| First Week .... | [16] | 17 | 18 | 19 | 20 | 21 | 22 |
| Second Week .. | 23 | [24] | 25 | 26 | 27 | 28 | 29 |
| Third Week ... | [30] | 1 | 2 | 3 | 4 | 5 | 6 |

It is interesting to note that, even if the calendar-week plan of computation were applied, the result would be the same both as to the *Carpenter* case and the present one; namely, in the former, there would be four publications during the first three weeks and no publication in the fourth week, whereas, in the latter, there would be one publication in each of the three consecutive weeks. This is shown by the following diagrams:

CARPENTER CASE, CALENDAR-WEEK COMPUTATION

(October–November, 1929)

|  | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|---|---|---|---|---|---|---|---|
| First Week .... | 27 | 28 | [29] | 30 | 31 | 1 | 2 |
| Second Week .. | 3 | 4 | [5] | 6 | 7 | 8 | [9] |
| Third Week ... | 10 | 11 | 12 | 13 | 14 | 15 | [16] |
| Fourth Week .. | 17 | 18 | 19 | 20 | 21 | 22 | 23 |

INSTANT CASE, CALENDAR-WEEK COMPUTATION

(November–December, 1939)

|  | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|---|---|---|---|---|---|---|---|
| First Week .... | 12 | 13 | 14 | 15 | [16] | 17 | 18 |
| Second Week .. | 19 | 20 | 21 | 22 | 23 | [24] | 25 |
| Third Week ... | 26 | 27 | 28 | 29 | [30] | 1 | 2 |

Not only the overwhelming weight of authority, but also sound reasoning and considerations of public policy support the rule of the *Ronkendorff* case that, when a statute requires publication of a notice once a week for a designated period, it is not necessary that publication be made each time on the same day of the

calendar week, or for each publication following the first one to be made at precise intervals of seven days.

The publication of notice of sale in the case at bar sufficiently complied with the applicable statute, and the sale was valid. The decree quieting title to the real property in respondents Burkheimer is affirmed.

ALL CONCUR.