[No. 5077–1.  Division One.  September 18, 1978.]

DWIGHT L. MORRELL, ET AL, *Appellants*, v. ARCTIC TRADING COMPANY, INC., *Defendant*, FIRST AMERICAN TITLE INSURANCE COMPANY, *Respondent*.

---

*Kane, Vandeberg & Hartinger* and *James A. Krueger,* for appellants.

*Dodd & Coney, P.S.,* and *Robert E. Ordal,* for respondent.

WILLIAMS, J.—The plaintiffs, Dwight L. and Selma S. Morrell, were successors in interest to the grantor of a deed of trust. When they became delinquent in payments due on a promissory note secured by the deed of trust, defendant First American Title Insurance Company, acting as trustee, sold the property to Arctic Trading Company, Inc., pursuant to the nonjudicial foreclosure and sale provisions of RCW 61.24. The Morrells then brought this action to recover the property and for damages. The Morrells appeal from an order granting First American's motion for summary judgment.

These facts are not in dispute: when the Morrells became delinquent, First American prepared to sell the secured property by (1) recording notice of a trustee's sale to be held on July 18, 1975; (2) causing the notice to be published

in the Daily Journal of Commerce on June 20 and 27, and July 3 and 11, 1975; and (3) posting the notice on the secured premises. First American had unsuccessfully attempted to find the Morrells' address by examining the trust deed and by searching the record for a request for notice. Because the Morrells' address was not stated in the instrument recording their interest and was not otherwise known to First American, a copy of the notice could not be transmitted to the Morrells as provided in RCW 61.24-.040(1)(b).

The Morrells raise three issues on appeal.[1] They first contend that summary judgment should not have been granted because questions of fact were raised as to whether First American exercised "due diligence" in attempting to discover the Morrells' address and notify them of the impending sale of their property. "Due diligence" is not required by RCW 61.24.040, which instead specifies the steps that must be taken in attempting to notify interested parties. Those steps were followed and no issue of fact is raised.

The next issue is whether First American's publication on the dates stated complied with RCW 61.24.040(3), which requires publication of the notice of trustee's sale "once weekly during the four weeks preceding the time of sale." This requires determination of what constitutes the "four weeks preceding the time of sale," and whether there was publication "once weekly" during those 4 weeks.

In general, courts have recognized two different interpretations of the word "week" for purposes of calculating when notice must be published. The first is the "statutory week," which consists of 7 consecutive days beginning with the day

---

[1]A fourth argument raised in appellants' brief is that the Washington deed of trust act, as set out in RCW 61.24, is unconstitutional because it fails to comply with procedural due process notice requirements. However, as the appellants conceded at the time of oral argument, this question has been settled by *Kennebec, Inc. v. Bank of the West*, 88 Wn.2d 718, 726, 565 P.2d 812 (1977), where the court held that the statute involves no "state action" and, therefore, is not violative of due process.

of first publication. The second is the "calendar week," which begins on the Sunday preceding the day of first publication and extends through the next ensuing Saturday. The cases adopting each method are compiled in 86 C.J.S. *Time* § 11 (1954).

The Morrells rely upon *King County v. Seattle,* 7 Wn.2d 236, 239, 109 P.2d 530 (1941), which states that, in cases of this sort, decisions of the Supreme Court "plainly imply a preference for the statutory–week method of computation." If the statutory week is adopted as the exclusive method of computation, First American did not comply with the statute requiring publication of notice "once weekly," because there was no publication the third week. (The dates of publication are bracketed.)

STATUTORY WEEK METHOD
(June – July, 1975)

|          | Fri.  | Sat. | Sun. | Mon. | Tues. | Wed. | Thurs. |
|----------|-------|------|------|------|-------|------|--------|
| 1st week | [20]  | 21   | 22   | 23   | 24    | 25   | 26     |
| 2nd week | [27]  | 28   | 29   | 30   | 1     | 2    | [3]    |
| 3rd week | 4     | 5    | 6    | 7    | 8     | 9    | 10     |
| 4th week | [11]  | 12   | 13   | 14   | 15    | 16   | 17     |

If, however, the calendar week method is employed, First American did comply because there was publication "once weekly."

CALENDAR WEEK METHOD
(June – July, 1975)

|          | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri.  | Sat. |
|----------|------|------|-------|------|--------|-------|------|
| 1st week | 15   | 16   | 17    | 18   | 19     | [20]  | 21   |
| 2nd week | 22   | 23   | 24    | 25   | 26     | [27]  | 28   |
| 3rd week | 29   | 30   | 1     | 2    | [3]    | 4     | 5    |
| 4th week | 6    | 7    | 8     | 9    | 10     | [11]  | 12   |

Although the Supreme Court has not expressly adopted either the statutory or calendar week method of computation, it has made two interpretative holdings which aid in

reaching our conclusion that it is unnecessary to adopt either method, exclusively.

The Supreme Court has held that the phrase "three consecutive weeks" in a statute requiring publication "once a week for three consecutive weeks" means a period of 21 consecutive days during which the publication must be in effect. *King County v. Seattle, supra; Wyant v. Independent Asphalt Paving Co.,* 118 Wash. 345, 203 P. 961 (1922); *In re Estate of Hoscheid,* 78 Wash. 309, 139 P. 61 (1914); *Ball v. Clothier,* 34 Wash. 299, 75 P. 1099 (1904). This interpretation furthers the legislative intent that notice be published during the full period prescribed by the particular statute. The evil to be avoided is described in *King County v. Seattle, supra* at 239–40:

> On the other hand, the rule of the three cited cases [*Ball, Hoscheid, Wyant*] can not be reconciled with the calendar–week method of computation. Under that method, the first week begins on the Sunday next preceding the day of first publication and ends on the following Saturday. Thus, for example, in a case where publication once a week for two consecutive weeks is required, if publication were made on two consecutive Fridays, then, under the calendar–week method, the second week of publication would be deemed to end on the Saturday following the second publication; and, publication for the prescribed period having been completed, the sale could legally be held on the next ensuing Monday, although only ten days, rather than the fourteen days required by the rule, would have elapsed between the first publication and the day of sale.

From this it is apparent that the reason prior cases "imply a preference" for the statutory week method is to make sure that there will not be a sale before the expiration of the full period of publication specified by the legislature. The sale to Arctic Trading was on July 18, 1975, 28 days after the date of first publication.

The court in *King County* also held that when a statute requires publication of notice once a week for a designated period, it is not necessary that the publication be on the

same day of each week or that a full 7 days elapse between publications. There, publication was made as follows:

STATUTORY WEEK METHOD
(November – December, 1939)

|          | Thurs. | Fri. | Sat. | Sun. | Mon. | Tues. | Wed. |
|----------|--------|------|------|------|------|-------|------|
| 1st week | [16]   | 17   | 18   | 19   | 20   | 21    | 22   |
| 2nd week | 23     | [24] | 25   | 26   | 27   | 28    | 29   |
| 3rd week | [30]   | 1    | 2    | 3    | 4    | 5     | 6    |

CALENDAR WEEK METHOD
(November – December, 1939)

|          | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|----------|------|------|-------|------|--------|------|------|
| 1st week | 12   | 13   | 14    | 15   | [16]   | 17   | 18   |
| 2nd week | 19   | 20   | 21    | 22   | 23     | [24] | 25   |
| 3rd week | 26   | 27   | 28    | 29   | [30]   | 1    | 2    |

The weekly newspaper chosen in *King County* did not publish on Thursday, November 23, which was Thanksgiving, a legal holiday. The court, in upholding the sale, stated at page 240:

> [W]hatever may be the method of computation employed, the great majority of the cases hold that it is sufficient if there be at least one publication during each of the weeks into which the prescribed period of publication has been bracketed, and that it is not essential for each publication to be made upon the same day of the calendar week.

■■ The purpose of the notice requirements in RCW 61.24.040 is to inform persons with interests in the property of the pending sale of that property, so that they may act to protect those interests. Under the statutory scheme, the best possible notice will be of 28 days' duration at regular 7–day intervals. "The four weeks preceding the time of sale" should, therefore, be construed to mean the maximum number of 28 days. *King County v. Seattle, supra.* That was accomplished in this case. The 7–day interval is only an ideal, of course, because of holidays and other causes. In the *King County* case, the court held that exact 7–day

intervals are not required if there is good reason to vary the spacing. There is good reason here.

■ The Daily Journal of Commerce, in which publication was made, did not go to press on Friday, July 4, 1975, because it was a legal holiday. Instead, the notice was published on Thursday, July 3. No harm was done and the variance recognized by *King County v. Seattle, supra,* is allowed. As was said in *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972), no construction should be given a statute which leads to unjust or absurd results.

In summary, publication of notice, as required by RCW 61.24.040, is sufficient if there is compliance under either the statutory week or the calendar week method of computation so long as the full period set by the statute (28 days) elapses between the date of first publication and the sale and there is good reason for departing from the 7–day interval. First American was in compliance with the statutory notice requirement.

However, there is one point about which there is a dispute of fact. An affidavit of Alan Pitts, a tenant of the Morrells who was living on the property in question, states that he phoned First American and asked whether the Morrells had been notified of the pending sale; that First American assured him that the Morrells had been so notified; that he subsequently received from First American a list of all persons, including the Morrells, who purportedly had been notified of the sale; and that had he not received those assurances from First American, he would have notified the Morrells himself. If, indeed, First American led Mr. Pitts to believe that the Morrells had been notified of the upcoming sale, the sale may have been irregular. This is a question to be resolved at trial.

*Reversed and remanded for further proceedings consistent with this opinion.*

ANDERSEN, A.C.J., and DORE, J., concur.

Reconsideration denied February 14, 1979.

Review denied by Supreme Court May 25, 1979.